## BRIGGS *vs.* VANDERBILT and DREW.

Where money has been advanced by a party, upon a contract, on the supposition that the other party was able to perform, on his part, when in fact performance was impossible, at the time, he is entitled, under a count for money had and received, to a restoration of his money, on the ground that the condition on which the same was paid has failed.

But he cannot recover it under counts for money lent and advanced, or for money paid, laid out and expended.

Where three distinct sets of passenger-carriers—one on the Atlantic ocean, one on the Isthmus of Nicaragua, and one on the Pacific ocean—combined their means of transportation, and so arranged them that the several routes formed a continuous and connected line from New York to San Francisco, included by the agent in a single advertisement, but there was no joint interest in the passage money, and no agreement as to its division, or the proportion which each set of owners was to receive; each making its own charge for passage, and issuing separate tickets to passengers, and there was no agreement to share any profit or loss; but, on the contrary, each set of owners had its own profits, and paid its own losses, and had no interest in the profits or losses of the others; *Held*, that this did not constitute a *partnership*.

Where carriers of passengers agree to transport a person from one place to another, by a particular vessel, which vessel, without the knowledge of either party, is a total wreck, at the time, so that performance of the engagement is impossible, the only obligation resting upon the carriers is to return to the other party, with interest, the money paid by him upon a consideration which has failed.

Where a complaint set forth a contract by the defendants to transport the plaintiff in a particular steamer, and alleged a breach in not conveying the plaintiff in that vessel, without either averring an obligation upon the defendants to provide a substitute in the event of the vessel's loss, or claiming any damage by reason of their neglect or refusal to forward him in some other vessel; *Held*, that the plaintiff must be confined to the breach specifically alleged, and could not recover upon any other grounds.

THIS was an appeal from a judgment entered upon the report of a referee. There were seven other actions brought against the defendants, by Schuyler Button, John McPhee, Horatio G. Clark, William W. Goodrich, Henry H. Perkins, Henry Douglass and Morris B. Andrews, respectively, for the same causes of action as those in controversy in this suit. The actions were brought by the plaintiffs, respectively, to recover damages for the non-performance of alleged contracts for the transportation of the plaintiffs from the city of New York to the city of San

Briggs *v.* Vanderbilt.

Francisco. The complaint in each action alleged, for the first cause of action, a contract made on the 3d of March, 1852, on the part of the defendants, for the consideration of $250 paid, to convey the plaintiffs and their baggage, as second cabin passengers, from New York to San Francisco, by the steamer Prometheus, to sail from New York on or about the 5th of said month to San Juan del Norte, by the usual means of transit, across the isthmus to San Juan del Sud, and from San Juan del Sud to San Francisco, by the steamer North America, without their being detained on the isthmus more than fourteen days, and alleged a failure to carry beyond San Juan del Sud, and consequent damage in expenses going and returning, and while there, and loss of health and of time. The complaints alleged for a second cause of action, that on or about the 3d of March, 1852, the defendants, in consideration of $250 paid, promised and agreed to convey the plaintiffs and their baggage, as second cabin passengers, from New York to San Francisco, by the Vanderbilt Line, so called, and that, in so being conveyed, the plaintiffs should depart from New York on the 5th of March then instant, and proceed by the usual route of the Vanderbilt Line, by the Isthmus of Nicaragua, without their being detained more than fourteen days on the said isthmus, and alleged failure to perform, and damages, as in first cause of action. The complaints alleged for a third cause of action, that on or about the 3d day of March, 1852, the plaintiffs, in consideration of $250, or thereabouts, paid, promised and agreed, that if the plaintiffs would take passage in the steamer Prometheus, then about to sail from New York to San Juan del Norte, in the Vanderbilt Line, and proceed by the said Vanderbilt Line to San Juan del Sud, that then-the defendants, within fourteen days after the plaintiffs' arrival on the Isthmus of Nicaragua, would take and convey them, as second cabin passengers, on board the steamer North America, from San Juan del Sud to San Francisco, and alleging that the plaintiffs did take passage on the steamer Prometheus, and proceed to San Juan del Sud by the Vanderbilt Line, as provided in said contract, and failure to perform on the part of the defendants, and damages as in first cause of action.

The complaints alleged for a fourth cause of action, that on or about the 3d of March, 1852, the defendants, in consideration of $250, or thereabouts, paid, promised and agreed, that if the plaintiffs would take passage on the steamer Prometheus, then about to sail from New York to San Juan del Norte, in the Vanderbilt Line, and proceed by the said Vanderbilt Line to San Juan del Sud, that then the defendants, within fourteen days after the plaintiffs' arrival on the isthmus of Nicaragua, would take and convey them, as second cabin passengers, on board an ocean steamer, from San Juan del Sud to San Francisco, and alleging performance on their part, and failure on the part of the defendants, as in the third cause of action, and damages as in the first cause of action. The said complaints alleged for a fifth cause of action, the common money counts. The answers of the defendants, in the several actions, first, admitted that there was a transportation line for conveying passengers and freight, between New York and San Francisco, called the Vanderbilt Line. The answers, secondly, alleged that said line consisted of the steamers Prometheus and Daniel Webster on the Atlantic, of various steamboats on the river San Juan and Lake Nicaragua, and of other means of transportation across the Isthmus of Nicaragua, and of the steamships North America, Pacific and Independence, on the Pacific. That the said steamships Prometheus and Daniel Webster were owned by the defendant Vanderbilt; that the said steamboats and other means of transportation across the isthmus were owned, managed and controlled by "The Accessory Transit Company of Nicaragua," a company duly incorporated by the government of the state of Nicaragua, and that the said steamship North America was owned and managed by the defendants in equal moieties, and the Pacific and Independence by a number of individuals not named. That Daniel B. Allen was the agent for the sale of tickets and making contracts for passage, for each of said vessels and each part of said line, separately, and not the joint agent of all; and that the defendant Vanderbilt did, on or about the time alleged, through his agent, the said Daniel B. Allen, in consideration of the sum of $90 paid by each plaintiff, issue and deliver to each of said

plaintiffs a ticket for passage on the Prometheus, from New York to San Juan del Norte. That, at the same time, "The Accessory Transit Company of Nicaragua," through its agent, the said Daniel B. Allen, did, in consideration of the sum of $35, paid by each plaintiff, issue and deliver to each of said plaintiffs a ticket for passage across the isthmus. And that, at the same time, the defendants, through their agent, the said Daniel B. Allen, in consideration of $125, paid by each plaintiff, did sell and deliver to each of said plaintiffs a ticket for passage from San Juan del Sud to San Francisco, on the North America. The answers, thirdly, denied, that the defendants ever agreed to carry the plaintiffs from San Juan del Sud to San Francisco, on the North America. The answers, fourthly, denied that the plaintiffs ever paid to them $250, or any sums, except those above expressly admitted to have been paid, and further denied that the defendants, or either of them, ever agreed to convey the plaintiffs from New York to San Francisco, or made any of the other agreements in the complaint set forth. And they alleged that the only contracts ever made by them with the plaintiffs, were contained in the said tickets for passage in the North America, and denied that said tickets contained an agreement that the North America should leave San Juan del Sud, or the plaintiffs be entitled to a passage from San Juan del Sud to San Francisco, at or within any particular time, but that the said tickets provided that the plaintiffs should have a second cabin passage on the North America, on her then next voyage from San Juan del Sud to San Francisco. The answers, fifthly, denied knowledge or information sufficient to form a belief, whether the plaintiffs were detained, or sustained losses, damages or expenses, as alleged in the complaints. The answers, sixthly, denied that the defendants conveyed the plaintiffs from New York, or from San Juan del Norte to San Juan del Sud, and alleged that they were conveyed from New York to San Juan del Norte by the defendant Vanderbilt, and from San Juan del Norte to San Juan del Sud by "The Accessory Transit Company of Nicaragua." The answers, seventhly, alleged that at the time of issuing the said tickets for passage on the North America, all

the parties believed her in existence, and in good and seaworthy condition, and able to perform said voyage, and that she would be ready to depart and would depart from San Juan del Sud to San Francisco early in April ; that the defendants had made all necessary arrangements, and used all proper precautions, to insure such departure on the part of said steamship ; and that said tickets were sold in good faith, and with the full expectation that the plaintiffs would, by virtue thereof, be conveyed to San Francisco as therein provided. The answers, eighthly, alleged that the North America was lost, by the perils of the sea, on or about the 27th of February, 1852. The answers, ninthly, alleged that on or about the 8th of May, 1852, the plaintiffs, in consideration of receiving a passage on the Daniel Webster from San Juan del Norte to San Francisco, assigned, transferred and delivered to B. S. Hopkins, purser of the Daniel Webster, their said North America tickets, and all claim and demand, by virtue of said tickets, or by reason of the matters set forth in said complaints, against the defendants, or either of them. That in consideration thereof, the plaintiffs were conveyed on the Daniel Webster from San Juan del Norte to New York. That said passage of each plaintiff was worth $80, and that the plaintiffs paid no other consideration therefor than the said assignment, delivery and transfer of said tickets. The answers, tenthly, alleged that on or about the 8th of May, 1852, the plaintiffs, in consideration that the defendant Vanderbilt would furnish them passage from San Juan del Norte to New-York, on the Daniel Webster, promised to pay the said Vanderbilt, on demand, such sum as the said passage was reasonably worth, and as security for such payment, assigned, transferred and delivered to the said Vanderbilt their said North America tickets, and all their claims and demands, by virtue of said tickets, or by reason of any of the matters set forth in said complaints, against the defendants, or either of them. That the defendant Vanderbilt did furnish the plaintiffs with such passage, and that each passage was reasonably worth $80, which the plaintiffs have not paid. The answers, eleventhly, alleged that there was, at the time of the sale of the said tickets, and had ever

since been in force in the state of Nicaragua, a law of said state, providing that whenever the performance of any contract should be rendered impossible, by inevitable accident, the party making such contract should be excused and absolved from the performance thereof, and should not be liable for any damages for the non-performance thereof. The answers, twelfthly, alleged that before the North America was to have sailed from San Juan del Sud to San Francisco, as before mentioned, she was lost and wrecked on the coast of the Pacific ocean, by inevitable accident. The answers, thirteenthly, alleged that the only contracts made by the defendants with the plaintiffs, were contained in said North America tickets; that such contracts were to be performed in the state of Nicaragua, and were therefore subject to its laws, and their performance having been rendered impossible, by inevitable accident, the defendants were excused and absolved from performance. The answers, fourteenthly, denied the allegations in the money counts in said complaints, and denied that they were indebted to the plaintiffs as alleged in said complaints.

On the 14th day of March, 1853, the issues in the several actions were referred, by stipulation and rule of court, to Charles P. Kirkland, Esq. of the city of New York, as sole referee. On the 9th day of May, 1853, the said referee made his report in said several actions, finding the following facts : 1st. That on or about the 5th day of March, 1852, the defendants jointly contracted with the plaintiff to convey him from San Juan del Sud, on the Pacific, to San Francisco, in California, by the steamer North America on her then next trip from San Juan del Sud to San Francisco, for the price of one hundred and twenty-five dollars, which was then paid by the plaintiff to the defendants as passage money. 2d. That on the said 5th day of March, 1852, the steamer North America was not in existence, she having about the 27th day of February, 1852, been wrecked and totally lost on the Pacific coast, which fact was not known to either of the parties at the time of making the said contract. 3d. That the said steamer was lost by the perils of the Pacific navigation. And as a conclusion of law he found and reported that

the defendants were bound to repay to the plaintiff the passage money paid by him as aforesaid, with interest from the time of its payment, and that that was the extent of the defendants' liability under the facts proved and found. He therefore reported that there was due from the defendants to the plaintiff, the sum of $135.29; for which sum, with costs, judgment was rendered in each action.

*P. Y. Cutler*, for the appellants. I. The plaintiffs on the 5th of March, 1852, embarked on the Prometheus at New York for San Francisco. Their application was for a passage to San Francisco. The contract was for the entire distance. This action is on the contract, for the defendants' negligence as common carriers, and may be maintained either against Vanderbilt and Drew jointly, or Vanderbilt alone. (*Fairchild* v. *Slocum,* 19 *Wend.* 329. *S. C.,* 7 *Hill,* 292. *Weed* v. *Saratoga and Schenectady R. R. Co.,* 19 *Wend.* 534. *Watson* v. *Ambergate &c. Railway,* 3 *Eng. Law and Equity Rep.* 497. *Muschamp* v. *The London and Preston Junction Railway Co.,* 8 *M. & W.* 421.) "If the law casts any duty upon a person, which he refuses or fails to perform, he is answerable in damages to those whom his refusal or failure injures. If several are jointly bound to perform the duty, they are liable jointly and severally for the failure and refusal." (*Ferguson* v. *The Earl of Kinnoul,* 9 *Clark & Fin.* 251. *Bank of Orange* v. *Brown,* 3 *Wend.* 158.) "When the proprietors of vessels use them for the purpose of carrying passengers for money, they subject themselves to the same responsibility for a breach of duty to those passengers as they would in regard to merchandise committed to their care." (*Keene* v. *Lizardi,* 5 *Louisiana Rep.* 531. *Angell on Carriers,* § 568.)

II. The defendants were partners for the whole route, as between them and third persons. The arrangement between them, by which they, in conjunction with the transit company, formed a connected and continuous line from New York to San Francisco, contracting and receiving pay at either end for the whole distance in a gross sum, which was divided according to

Briggs *v.* Vanderbilt.

a rule adopted between themselves, *jointly advertising this line as a through line,* each part of the line sharing in the patronage of each passenger and interested in securing business for the line as a whole, created a community of interest between them in the whole line, and constituted them partners in it as to the public. (*Fromont* v. *Coupland,* 2 *Bing.* 170. *S. C.,* 9 *Com. L. R.* 366. *Green* v. *Beesley,* 2 *Bing. N. C.* 108. *S. C.* 29 *Com. L. R.* 275. *Champion* v. *Bostwick,* 11 *Wend.* 571. *S. C. in error,* 18 *Wend.* 175. *Patterson* v. *Blanchard,* 6 *Barb.* 537. *S. C. on appeal,* 1 *Selden,* 186.) (1.) The defendants, by the manner in which they did business, held themselves out to the public as partners in the whole line. They must be presumed to have been personally cognizant of the manner in which the business was done at the office of the line in New York, and with their mode of advertising in the newspapers. (2.) If not personally cognizant of these things, they are bound by the acts of their general agent, Allen, both in regard to the manner in which the business was done, and its effect as between them and the public. Having by these circumstances put themselves in the position of joint proprietors of the whole line, and induced third persons to contract with them under the impression thus created, they are not now at liberty to screen themselves from the consequences of a partnership, by showing arrangements as between themselves not amounting to a partnership. (2 *Kent's Com.* 27, 31, 32, 33.)

III. The defendants' duty as carriers, to carry the entire distance, is too plain for discussion. The undertaking to do was absolute. (*Angell on Carriers,* § 531. *Coppin* v. *Braithwaite,* 8 *London Jurist, p.* 75.) The mode in which the law requires that passengers should be carried, is clearly stated by Judge Story, in *Chamberlain* v. *Chandler,* (3 *Mason,* 142,) in these words: "Their (the passengers') contract with him, is not for mere ship room and personal existence on board, but for reasonable food, comforts, necessaries and kindness. It is a stipulation not for toleration merely, but for respectful treatment, for that decency of demeanor, which constitutes the charm of social life, for that attention which mitigates evils, without

reluctance, and that promptitude which administers aid to distress." (*See Keene* v. *Lizardi*, 5 *Louis. Rep.* 431 ; 3 *Kent's Com.* (*ed. of* 1832) *p.* 160.)

IV. The defendants have violated these duties. (1.) By forcibly disembarking the plaintiffs at Greytown. (*Coppin* v. *Braithwaite*, 8 *Jurist*, 875.) (2.) By the detention of the plaintiffs at Greytown. (3.) By subjecting the plaintiffs to ill treatment, during the carriage from ocean to ocean, through central America. (4.) By the detention of the plaintiffs at San Juan del Sud. (*Angell on Carriers*, §§ 618, 619. *Chitty on Contracts*, 437, 730, 732.) (5.) By the defendants' omission to carry the plaintiffs to San Francisco from San Juan del Sud.

V. The loss of the North America did not excuse either of these omissions of duty. (1.) The loss did not occur by the perils of the sea, or inevitable accident. (*McArthur* v. *Sears*, 21 *Wend.* 190. *Forward* v. *Pittard*, 1 *T. R.* 34. *Friend* v. *Woods*, 6 *Grattan*, 189. *Angell on Carriers*, §§ 151, 154, 159. *Coggs* v. *Bernard*, 1 *Smith's Leading Cases*, 233.) (2.) If the loss had occurred by inevitable accident, it would not excuse the defendants' omission to forward the plaintiffs from San Juan del Sud to San Francisco. It devolved upon them the duty to supply another vessel to carry the plaintiffs forward from San Juan del Sud. (*Cope* v. *Dodd*, 13 *Penn. R.* 33. *Chitty on Contracts*, 730, 732, 734–6. *Watson* v. *Duykick*, 3 *John.* 335. *Detouches* v. *Peck*, 9 *Id.* 210. *Angell on Carriers*, § 531. *Abbott on Shipping*, *p.* 503, *note*. *Schieffelin* v. *N. Y. Ins.*, 9 *John.* 21. *King* v. *Sheppard*, 3 *Story*, 350. *Beebe* v. *Johnson*, 19 *Wend.* 500. *Milldam Foundry* v. *Peck*, 21 *Pick.* 417. *Reid* v. *Edwards*, 7 *Porter*, 508. *Bouvier's Law Dict.* "*Act of God.*") (3.) It was an entire contract, and cannot be apportioned, " So that if a party undertake to complete an act which is entire and indivisible, before his claim to remuneration is to accrue, he cannot recover for a partial performance, although the completion of the act was prevented by inevitable accident." (*Chitty on Contracts*, 632. *Willingder* v. *West & Royloton*, 4 *Pick.* 103. *Chanter* v. *Leese*, 4 *M. & W.* 295, 311. 2 *Viner's Abr. tit. Appointments.* 2 *Po*-

*thier, by Evans,* 44. 4 *Cruise's Digest, tit.* 28, "*Rents,*" *ch.* 3, §§ 7, 8. *Wilcox* v. *Parmelee,* 3 *Sand. S. C. Rep.* 610.) (4.) The claim to passage money does not accrue till the voyage has been performed, and the passengers landed at the place of destination. (*Howland* v. *The brig Lavinia, Peter's Admiralty R.* 123, 126.)

VI. The defendants' objection that the contract is expressed in the tickets and is wholly confined to them, is not sound in law or in fact. (1.) The ticket is a mere license to the passenger to enter on shipboard, and a direction to the commander of the vessel to receive the passenger. This is what it is intended by the parties to be, and what in practical effect it is. It is issued for the defendants' convenience, and recalled when that convenience demands it. (2.) The ticket expresses on its face none of the terms of contract, except that the consideration money has been paid. It is in form of a receipt, and nothing more. But the contract with the carrier consists of an agreement to transport the plaintiff from the port of embarkation to the port of debarkation, without unreasonable delay, and that the passenger shall be furnished with berth and reasonable food during the passage; and where is that agreement to be found? Not on the ticket, but in the advertisements and parol representations; the latter being received on precisely the same ground as the former. (3.) It is signed by one party only. This would be sufficient, if executed in duplicate; but it is not, and this is an indication that the parties do not regard it a contract. (4.) That the ticket is not a contract "*inter partes,*" is farther evidenced by the fact that the captain required the passenger to deliver it to him (as the evidence that the consideration of the contract has been paid) immediately on his arrival on shipboard, and before the voyage is commenced. This, too, the captain may lawfully require the passenger to do. (*See Loring* v. *Aborn,* 1 *Law Reporter, N. S.* 461.) And the fact that he may require it, shows that it is not a contract. Whoever heard of a right in one contracting party to have sole possession of a contract before its performance?

VII. Whether the ticket is regarded as the contract or not,

the return of that ticket to the defendant is no bar to this action. (1.) It was not returned until after the cause of action accrued—was perfect indeed, and then only under peculiar circumstances. (2.) It nowhere appears that it was the intention of the parties that the return of the ticket should waive the defendants' prior torts, or discharge the cause of action then existing. (3.) It was not sold for the purpose of having another passenger travel in the defendants' vessel, in fraud of defendants' rights, but merely returned to the defendants as the only means of deliverence from certain sickness, perhaps death, to which he was exposed by the defendants' prior omissions of duty. . The plaintiff here does not sue merely for not carrying, according to contract, on the Pacific ocean ; nor merely for not properly performing the trip from San Juan del Sud to San Francisco, *in respect of which, only,* the ticket is claimed by the defendants *to be the contract,* but for the wrongful neglects of duty of the defendants, by which, in any aspect of the case, the plaintiff was delayed till *he lost his health.* (4.) This case, unlike any other, is one where a party, having a perfect right of action for a tort, is required, in order to save his health, perhaps his life, to deliver up a paper which had no value whatever, and no vitality, except as evidence of the payment of money, a mere piece of waste paper, and he does so without any intention of waiving his right of action. How then can it be said to be effected ? (5.) Suppose even it were a counterpart of the contract, and after breach one party had delivered his counterpart to the other, under such circumstances, would that discharge and release the cause of action ? Would it vary the case in any respect, except that the evidence of the existence and contents of the contract would be rendered more difficult of procurement ? Even if it were the contract, and had been pledged to the defendants, the general property and right of action remained in the plaintiff. (7.) If the plaintiff had sailed to San Francisco, can there be any doubt that he could then have maintained the action for the loss of health and other torts of which he complains ? It is identical with the loss of a passenger on a railway car, whose leg is broken by the carelessness of the servants

of the rail road company. Can he not maintain an action, whether he goes to the end of the journey or not, or even if some one else should travel to the end of the journey on his ticket? But in this case no one traveled on the plaintiff's ticket, which was delivered up to the defendants after the cause of action was complete.

VIII. The damages recovered by the plaintiffs are not large enough, and ought to have been much larger. Each was entitled to recover the price paid for his passage; the price of his return passage, including the transit across the isthmus; the price of board; the money paid for medical attendance; the value of his services lost; the damages he sustained by *mental* as well physical sufferings; (*Chamberlain* v. *Chandler*, 3 *Jurist*, 242; *Coppin* v. *Braithwaite*, 8 *Id.* 875;) and such sum as a jury might deem proper, by way of smart money, for the defendants' wanton violations of duty to send him to San Francisco, after they heard of the loss of the North America, and had it in their power to send him on in the steamer Pacific. (*Wort* v. *Jenkins*, 14 *John.* 352. *Collins* v. *Albany and Schenectady R. R. Co.*, 12 *Barb.* 492. *Morse* v. *Auburn and Syracuse R. R. Co.*, 10 *Id.* 621, 622. 1 *Kent's Com.* 7th ed. 618, *note.*) The referee erred in the rule of damages adopted by him, or rather in holding that the plaintiffs were not entitled to any damages, properly and technically so called. (*Driggs* v. *Dwight*, 17 *Wend.* 71. *Freeman* v. *Clute*, 3 *Barb. S. C. R.* 424. *Giles* v. *O'Toole*, 4 *Id.* 261. *Lawrence* v. *Wardwell*, 6 *Id.* 423. *Durkee* v. *Mott*, 8 *Id.* 423. *Davis* v. *Talcott*, 14 *Id.* 611. *Vanderslice* v. *Newton*, 4 *Coms.* 130. *Johnson* v. *Arnold*, 2 *Cushing*, 46.) Should the court hold, with the referee, that the defendants jointly contracted to convey the plaintiffs only from San Juan del Sud to San Francisco, the same rule of damages would apply as if they had jointly contracted for the whole route. Treating it as a contract to convey only from San Juan del Sud to San Francisco, the direct and necessary consequences of the breach of that agreement, on the part of the defendants, are the same to the plaintiffs as in the other case. It was in reference to that part of the route that the

breach was committed. The plaintiffs incurred the same expenses in going to San Juan del Sud from New York, the same in detention and sickness there, and the same in returning, and their loss of time was the same, and all in consequence of the defendants inducing them, by their promise, to go to San Juan del Sud to receive the passage contracted for. They went there upon the strength of that contract, and incurred the losses charged in consequence of the breach. They were the direct and natural result of that breach, and came within the rule of damages laid down in the cases cited in the last preceding subdivision of this point.

*H. F. Clark,* for the defendants. I. The contracts with the plaintiffs, whatever may be their legal effect, were made with Daniel B. Allen, who contracted in his own name, without disclosing any principal. The plaintiffs, instead of resorting to Allen, sue the defendants, and the preliminary question arises, within what scope had Allen authority to bind them. The only authority from the defendants to Allen was to issue tickets for the passage in the North America from San Juan del Sud to San Francisco, and there is no evidence in the case establishing against the defendants jointly any liability, except that which results from the issuing of such tickets by Allen. As to the character of the contract, see 1 *Blatchford's Rep.* 569.

II. There was no contract made *even by Allen* for the transportation of the plaintiffs for the entire route from New York to San Francisco. He did issue by authority, and for account of three distinct and separate ownerships, three separate and distinct tickets, each entitling the passenger to the particular privilege designated in the respective tickets. The means of transportation employed by the three different proprietorships, though different from each other, were yet so connected together in their arrangements for arrival and departure, as to form one continuous line; but still there was no joint ownership or interest —no partnership. Each portion of the line conducted its own business, and paid its own expenses, and received its own profits. This case is one of *connecting*, not *associated* proprietorships,

and does not come within the principle of the case of *Champion* v. *Bostwick*, (18 *Wend.* 175.) In that case, joint expenses were paid out of a common fund.

III. The only contract which Vanderbilt and Drew can be held to have made with the plaintiffs, is that which results from the issuing by Allen of the North · America ticket; and with a view to determine what was intended, reference must be had to the state of things existing and supposed to exist at the time of the issuing of the ticket. It was supposed by the plaintiffs and by Allen that the steamship North America was on the Pacific coast, employed in making her appointed voyages between San Juan del Sud and San Francisco, and of course subject to the vicissitudes of that trade. By the issuing of the ticket, was intended to be secured to the passenger the privilege of a passage from San Juan del Sud to San Francisco in the North America, on the voyage designated in the ticket. And this is the whole of the contract. Neither the ticket nor the transaction itself purported to make an absolute unqualified contract for the transportation of the passenger. The dealing was with reference to the steamship North America and a particularly specified voyage.

IV. At the time of the issuing of the ticket, (March, 1852,) the North America was a wreck, having been lost by peril of the sea near Acapulco on the 27th of February, 1852. This fact was unknown in New York until after the plaintiffs had sailed. *The dealing of the parties was therefore with reference to a supposed state of things which did not in fact exist. There was a mutual mistake of fact.*

V. The referee properly reported in favor of the plaintiffs for the amount of their money received by the defendants, on the ground of failure of consideration. No other damages were recoverable. (3 *John.* 335. 4 *Camp.* 241.)

*By the Court,* S. B. STRONG, J. If the referee was right in supposing that the plaintiffs' only substantiated claim was for a return of the money advanced for the passage in the steamer North America on the Pacific, as paid on the mistaken

supposition that she was capable of performing the service, when she was in fact a wreck at the time, he erred in awarding the money on the third count in the complaint. That count was for a breach of contract; but, upon the principle assumed by the referee, the contract was inoperative for any purpose, and the plaintiff was entitled to a restoration of his money, because the condition on which it had been paid had wholly failed. It was so much money had and received by the defendants for the plaintiffs' use, and could be recovered back under the appropriate money counts. The fifth count contains charges for money lent and advanced, and for money paid, laid out and expended for the use of the plaintiff, neither of which was sustained by the proof; but it omits the usual claim for money had and received, which, if preferred, would have sustained a report in favor of the plaintiff. However, as these cases come before us on an appeal by the respective plaintiffs only, the objection to the *recoveries*, so far as they go, must be considered as having been abandoned by the defendants, and could not, if urged on argument, which it was not, have availed them now.

The *second* and *fourth* counts aver *general* engagements to convey the plaintiff—the second from New York, and the fourth from San Juan del Sud—to San Francisco. But neither were sustained by the proof, as that established a special and an essentially different contract.

The first count sets out a joint contract by the defendants to convey the plaintiff from New York to San Juan del Norte in the steamer Prometheus, from San Juan del Norte to San Juan del Sud by the transit company, and from San Juan del Sud on the Pacific ocean, to San Francisco, in the steamer North America. The plaintiff could sustain his action only by proving the alleged contract. The evidence adduced showed that the defendants were joint owners of the North America, and that they had, through their agent, promised to transport the plaintiff, on board of that steamer, from San Juan del Sud to San Francisco. But he failed to prove that the defendant Drew had any interest whatever in the means, or was at all concerned in the profit or loss, of transporting passengers from New York

to San Juan del Norte, or from the latter place to San Juan del Sud; and indeed it is quite apparent that he had none. In that respect this case differs from *Champion* v. *Bostwick and others*, (11 *Wend.* 571, 18 *Id.* 175.) In that case the money received on different routes, by separate owners, was to be divided between them in proportion to the number of miles ran by each; and it was for that reason held that such owners were jointly liable as copartners, to third persons. But Chancellor Walworth, who gave the only written opinion in the court for the correction of errors, said truly, that "the case would be entirely different if each stage owner was to receive and retain the passage money earned *on his part of the line*, and to sustain all the expenses thereof, and was only to act as agent of the other in receiving the passage money for them, for the transportation of passengers over their parts of the line. In that case there would be no joint interest, and no liability to third persons as partners." In this case there were three distinct concerns—on the Atlantic, on the isthmus, and on the Pacific—and there were different and separate owners of the steamers on the Pacific. There was no joint interest in the passage money, no agreement as to its division, or any proportion which each was to receive. Each made its own charge, not dependant in any manner upon the others, and there was no agreement to share any profit or loss. There was not, therefore, any partnership. Drew had nothing to do with the navigation company on the Atlantic, or the transit company on the isthmus, and did not participate in the engagements of either. There were separate tickets for each of the three routes. That in which alone the defendant Drew was interested, was for a passage in the steamship North America on her then next voyage from San Juan del Sud to San Francisco. The agent who issued the tickets testified (and there was nothing to contradict him) that he issued the tickets to San Juan del Norte by Vanderbilt's authority, across the isthmus by the authority of the transit company, and for the passage in the North America by the authority of the defendants. There was a separate and distinct price for each, for which the agent kept and rendered separate

accounts. Each had its own profits, and paid its own losses, and had no concern with the profits or losses of the others. They had, it is true, the same agent, but he acted in his vicarious capacity separately for each. The agent swore that he was never authorized by the defendants to make any contracts for them, for passage on the Atlantic or across the isthmus. The means of transportation were so arranged that the routes formed a continuous and connected line, and they were included by the agent in a single advertisement. It would seem, too, that they together purchased their coal in gross, at the isthmus, but when called for it was charged to each separately as it was delivered. The joint agency, if it may be so called, extended no farther. There was no doubt, a joint liability to the vendors of the coal, and to the publishers of the advertisements, but if either or both constituted a quasi partnership, it extended no farther. There is a general understanding between the different rail roads in the country which connect together, as to their times of arrival and departure, and the routes are frequently advertised as forming one line; but so long as they continue disconnected as to the profits and losses of transportation, and each has or bears its own, there is no partnership, and neither is responsible for the engagements of the other.

In the case under consideration, had the plaintiff's professional adviser supposed that there was a general partnership or joint responsibility between the three concerns, he should, and probably would, have instituted his action against all the responsible parties. The defendants cannot, however, now raise the objection of a want of the necessary parties, except possibly on the ground of variance in setting forth a special contract, and especially as to a part of it where the defendants prosecuted are chargeable, if at all, by association with those who were alone the ostensible contractors.

Upon the whole, it seems to me that the plaintiff has failed in sustaining his first count, so far as it relates to the alleged participation of the defendant Drew in the contracts for the transportation across the Atlantic and the isthmus. If he had any joint agency or interest in those contracts, although it might

have been limited, when extended to the Pacific, to the steamer in which alone he had a part, I should have hesitated about agreeing with the referee, and might have held him responsible for the delay and other mischances in crossing the isthmus, so far as they may have resulted from the negligence of the association or of the concerns composing it.

The third and only remaining count sets forth a contract to transport the plaintiff from San Juan del Sud to San Francisco, in the defendants' steamer North America, and complains of a breach of the engagement in not conveying the plaintiff in that vessel. That count neither avers an obligation upon the defendants to provide a substitute, in the event which had happened, nor claims any damage by reason of their neglect or refusal to forward him in some other vessel. The allegation of the breach is specific, and the plaintiff must be confined to that. It is clear that the contract, so far as it related to the North America, was made through a mutual mistake. Both parties of course supposed that she was capable of performing the stipulated service; whereas she was, at the time, a total wreck. It was not very material, as to the question of the defendants' liability, whether the mischance resulted from the carelessness of the defendants' agents, or from inevitable accident. The defendants violated no duty to the plaintiff, for none such existed at the time of the loss. As the performance of their engagement was impossible, by reason of a fact which could not have been known to either party at the time, the only resulting obligation upon the defendants was to return the money to the plaintiffs, who had paid it upon a consideration which had wholly failed. That, with interest, has been awarded to him by the referee, and he is entitled to no more.

No doubt it was immaterial to the plaintiff by what vessel in particular he should be transported across the Pacific; and his main object was to contract for the voyage generally, rather than for its accomplishment by any particular means. And it is a general rule to construe a contract so as to effectuate the main design of the parties, where that can be done without expressly contradicting some clear and important provision. But

The People *v.* Baker.

then the intent of both parties must be considered. Here, although the plaintiff's main object was to secure a passage generally, yet the defendant Drew's design was to furnish it by the steamer North America, in which alone he was interested.

Both parties have been unfortunate. The plaintiff lost his passage, and the defendants their vessel. The loss of the plaintiff is by no means peculiar. Others have been far more unfortunate through inevitable accident, and in cases, too, where, as in the instance under consideration, there was no legal redress.

The judgment upon the report of the referee, in each case, should be affirmed.

[KINGS GENERAL TERM, January 2, 1855. *S. B. Strong, Rockwell* and *Dean*, Justices.]