## BONSTEEL vs. VANDERBILT & DREW, and THE ACCESSORY TRANSIT COMPANY OF NICARAGUA.

A line formed for the purpose of conveying passengers and freight from New York to California consisted of three separate and distinct divisions, owned by different proprietors, viz. one from New York to San Juan del Norte, owned by V.; one from the latter place to San Juan del Sud, owned by the Accessory Transit Co.; and a third from the place last named to San Francisco, belonging to V. & D. The money received from passengers, for tickets, was not divided among the different proprietors according to the number of miles each was to convey the holder, but each proprietor received a fixed price, out of the whole passage money, and issued separate tickets to passengers; without any agreement for the sharing of the profits or losses, between the owners of the different divisions of the line. The plaintiff paid the price of a passage from New York to San Francisco, and received from A., the agent of the several proprietors, separate tickets, entitling him to a passage in the Prometheus to San Juan del Norte, by the Transit Co. to San Juan del Sud, and thence, *on the North America*, to San Francisco. There was a performance of the contract, as to the Prometheus and the Transit Company, but a failure in respect to the North America, in consequence of the loss of that vessel at sea, before the making of the contract, without the knowledge of either party. In an action by the plaintiff, against the proprietors of the several divisions of the line, to recover damages for a non-performance of the contract;

*Held* 1. That V. & D. were the proper persons to answer for a breach of the contract relating to the transportation of the plaintiff from San Juan del Sud, to San Francisco, on the North America; they being the owners of that boat, and the contract having been made by A. their agent.

2. That it was no objection to a recovery against V. & D. that another party— the Transit Company—was sued with them, as a joint defendant, and that all three were alleged in the complaint to have been joint contractors.

3. That as it turned out, upon the trial, that the contract was in fact made by two, and not by all three, of the defendants, it was proper to discharge the Transit Company and proceed against the other two defendants, V. & D.; and to conform the pleadings to the proof, and give judgment according to the contract as proved on the trial.

4. That it was no objection against a recovery that the contract was alleged, in the complaint, to be to carry the plaintiff from New York to San Francisco, and that it turned out in proof to be for only a part of the distance, viz. from San Juan del Sud to San Francisco.

5. That the North America having been lost, previous to the making of the contract, and the one party having paid and the other having received the passage money, in ignorance of that fact, there was a failure of the consideration, which entitled the plaintiff to recover back the money paid.

6. That the agreement amounted to nothing more than the sale of a passage ticket to go on the North America. That the defendants did not engage to carry the

---

Bonsteel *v.* Vanderbilt.

---

plaintiff unconditionally and at all hazards; and that performance was excused by inevitable accident.

7. That the only legal claim, growing out of the transaction, was the right of the plaintiff to recover against V. & D. the amount paid them for passage money on the North America, with interest. WATSON, J., dissented.

*Briggs* v. *Vanderbilt & Drew*, (19 *Barb.* 222,) approved.

THIS action was brought to recover damages of the defendants, for not conveying the plaintiff from New York to California, in the year 1852, according to agreement. The pleadings, and the facts proved on the trial, were very similar to those in the case of *Briggs* v. *Vanderbilt & Drew*, (19 *Barb.* 222.) The action was tried before Justice WATSON and a jury, at the Ulster circuit, in July, 1853. On the trial the counsel for the plaintiff read in evidence a stipulation, signed by the attorney for the defendants Vanderbilt & Drew, by which it was admitted that an advertisement of which the annexed is a copy, was drawn by Daniel B. Allen, agent of the Vanderbilt line of steamers, and by his authority and direction published in the Courier and Enquirer, Tribune and Herald newspapers, published in the city of New York, from the 27th of January, 1852, till the 7th of May, 1852, and that the expense of publication was paid by said Allen at the office of said line in New York.

"Vanderbilt's new line between New York and San Francisco. The only through line, via Nicaragua, a number of days shorter than any other route, composed of the following first class steamships between New York and San Juan de Nicaragua.

The Prometheus—Capt. Churchill.

The Daniel Webster—Capt. Baldwin.

And between San Juan del Sud and San Francisco:

The North America—Capt. Blethen.

The Pacific—Capt. Jarvis.

The Independence—Capt. Wakeman.

These steamships are all new, built expressly for this route, and for speed, safety and accommodations are unsurpassed. The Prometheus will leave New York, from Pier No. 3, North river, on the 5th of each month, at 3 o'clock P. M. commencing Jan. 5, 1852. The Daniel Webster on the 20th of each month, com-

mencing Jan. 20, 1852. The days of leaving San Francisco will be the 1st and 15th of each month. When the above days fall on Sunday, the day of sailing will be on the Saturday previous. From San Juan de Nicaragua to San Juan del Sud passengers will be promptly conveyed over the new Transit Route of the Nicaragua Company, having but twelves miles of land transportation, and at that point embark in one of the above named Pacific steamers for San Francisco. The great saving of distance by this route over others heretofore established, and a speedy and comfortable transit between the two oceans, through a beautiful and healthful country, offer inducements to the travelling public equalled by no other line. No passage secured until paid for, and but a limited number of passengers will be taken. For freight or passage apply only at the office of the line, No. 9 Battery Place, upstairs.        D. B. ALLEN.

All persons are forbid trusting any one on account of the above boats."

The plaintiff's counsel then read in evidence two tickets in the words and figures following :

" *Prometheus.*        VANDERBILT'S LINE.

Second Cabin ticket, No.        not transferable.    State Room
                Berth        New York, March 5th, 1852.

Mr. ORRIN S. BONSTEEL.    Paid for second cabin passage in the steamship Prometheus on her next voyage from New York to San Juan de Nicaragua.        D. B. ALLEN, Agent."

" *North America.*..    VANDERBILT'S LINE FOR CALIFORNIA
                VIA NICARAGUA.

Second Cabin ticket, No. 171, not transferable.
                New York March 5th, 1852.

Without Berth.

Mr. ORRIN S. BONSTEEL, M. D. Paid for second cabin passage in the steamship North America on her next voyage from San Juan del Sur to San Francisco.
                D. B. ALLEN, Agent."

The plaintiff then proved that he purchased the above tickets, at the office of the Vanderbilt Line, No. 9 Battery Place, New

Bonsteel *v.* Vanderbilt.

York, on the 13th of February, 1852, and paid therefor the sum of $250 for a through passage from New York to San Francisco. That this was what the plaintiff applied for, and the agent said he could give it, and that the price was $250; whereupon the plaintiff paid the money. That the agent assured the plaintiff that passengers would be delayed 14 or 15 days on the isthmus, and that that delay would be all. That the river steamers would come alongside of the Prometheus, and that the passengers would not be delayed at all at Greytown. That they would not be over 30 or 40 hours in crossing the isthmus. The plaintiff further proved that he sailed from New York, in the Prometheus, on the 5th of March, and was over nine days. in reaching Greytown, and was detained there eleven days, and was eight days and an half in going from there to Virgin Bay; and that he was obliged to wait at San Juan del Sud 28 or 30 days for a vessel. The plaintiff was sick, about fourteen days, at this place; when, not being able to proceed any further, in consequence of the loss of the North America, he returned to New York.

The counsel for the Accessory Transit Company moved the court that the complaint be dismissed as to the Accessory Transit Company, on the ground that no undertaking or liability on their part had been proved. The court granted the motion, and the complaint was accordingly ordered to be dismissed as against the Accessory Transit Company. The counsel for the defendant Drew thereupon moved the court that the complaint be dismissed, or a nonsuit ordered, as to the defendant Drew, on the grounds, 1. That no joint undertaking or liability on behalf of all the defendants had been proved, as alleged in the complaint. 2. That no undertaking on the part of Drew, to carry the plaintiff from New York to San Francisco, had been proved. 3. That no liability on the part of the defendant Drew, for the representations of the defendant Vanderbilt, had been proved. That the action being founded on a joint contract, and the complaint being dismissed as to the Transit Company, one of the defendants, it must be dismissed as to the others. The court denied the motion, and refused either to direct a nonsuit, or a dismissal

of the complaint as to the defendant Drew, and the counsel for the defendant Drew excepted.

The counsel for the defendant Vanderbilt thereupon moved that the complaint be dismissed, or that a nonsuit be entered as to the defendant Vanderbilt, on the grounds, 1. That the action was on a contract alleged to be a joint contract on the part of all the defendants, and that no such joint contract had been established, the complaint not having been sustained as to the Transit Company. 2. That the complaint alleged an entire undertaking to carry from New York to San Francisco, and no such entire undertaking had been proved. 3. That the complaint could not be sustained on the ground of fraudulent representations, because there were no sufficient allegations of fraud in the complaint, and no false or fraudulent representations were proved. The court denied the motion.

The jury found a verdict in favor of the plaintiff, against the defendants Vanderbilt & Drew, for $10,000. And those defendants, upon a case, moved for a new trial.

*H. F. Clark*, for the defendants.

*P. Y. Cutler*, for the plaintiff.

PARKER, J. I think the defendants were not partners in the business of conveying passengers from New York to San Francisco. There were three separate and distinct divisions of the line; one from New York to San Juan del Norte; another from the latter place to San Juan del Sud, and a third from the place last named to San Francisco. Allen sold the plaintiff three tickets, and sold each as the agent of the owner of one part of the line. The money paid for the tickets was not divided among the defendants according to the number of miles each was to convey the plaintiff, but each defendant received the fixed price of his ticket. If a ticket had been sold for any one part of the line, as for a passage from New York to San Juan del Norte, the owners of the other parts of the line would have had no interest in such sale, and would have received no share

of the avails.   In purchasing the tickets, therefore, the plaintiff made, through Mr. Allen, as agent, three separate contracts.

The contracts were not general, to convey the plaintiff, but special, to give him a passage in the Prometheus to San Juan del Norte, by the Transit Company to San Juan del Sud, and thence on the North America to San Francisco.   There was a performance as to the Prometheus and the Transit Company, but a failure as to the North America, because of the loss of that vessel at sea, before the making of the contract.   It follows that our inquiries in this case must be restricted to the latter contract.   We have nothing to do with the two contracts under which the plaintiff was taken to San Juan del Sud. Vanderbilt & Drew are the proper persons to answer for a breach of that contract.   They were the owners of the North America, and Allen made the contract as their agent.

It is no good objection to a recovery against them, that another party, the Transit Company, was sued with them as a joint defendant, and that all three were alleged, in the complaint, to have been joint contractors.   As it turned out upon the trial that the contract in question was in fact made by two and not by all three of the defendants, it was proper to discharge the Transit Company and proceed against the other two defendants.   It was proper to conform the pleadings to the proof, and to give judgment according to the contract, as proved on the trial,   Such a practice could work no injustice, where, as in this case, both parties understood the real question in controversy and came prepared to litigate it.   A defendant can never be surprised, under such circumstances.

Nor was it a good reason against a recovery, that the contract was alleged in the complaint to be to carry the plaintiff from New York to San Francisco, and that it turned out in proof to be for only part of the distance, viz : from San Juan del Sud to San Francisco.   Here, again, there was no surprise to the defendants, and the plaintiff ought to recover according to his proof.   If necessary, an amendment of the complaint could at any time be made.

I think the plaintiff then, under the proof in the cause, was

---

---

entitled to recover against Vanderbilt & Drew; and the only remaining question is, as to the rule and extent of the damages. They were not of course responsible for any thing that happened before the plaintiff reached the point from which the North America was to start for San Francisco. The loss of the North America was not known to either party at the time of the making of the contract. The one party paid and the other received the passage money, in ignorance of the fact on which the ability to perform the contract depended. There was a failure of the consideration for which the plaintiff paid his money, but it was no more the fault of the defendants than of the plaintiff, that the contract was not performed.

I cannot see that it makes any difference in this case, that the steamer North America was to sail from a distant port, instead of starting from New York. The contract was the sale of a passage ticket to go on board of her, and nothing more. Suppose a passage ticket had been purchased to go on the Prometheus from New York to Nicaragua, and the Prometheus, at the time of such purchase, had been lost at sea while on her return voyage to New York. On the day for her sailing, the passenger would, for the first time, learn that his contract could not be performed. It cannot be pretended, I think, that he could recover back any damages beyond his money paid. A contract to carry or to convey, when the party engages, unconditionally, to perform, as in *Harmony* v. *Bingham*, (2 *Ker.* 99,) would be binding; and a performance would not be excused by inevitable accident or other unforeseen contingency. But this agreement amounted, I think, to nothing more than a sale of a passage ticket to go in the North America. The defendants did not engage to carry the plaintiff, unconditionally and at all hazards. They sold only the right to go upon their vessel.

Since the verdict in this cause, all the questions which arose on the trial have been deliberately examined, and decided by this court, sitting in the second district, in the case of Briggs against these same defendants. The case is reported in 19 *Barb.* 222, and I refer to the very full and able opinion of Mr. Justice S. B. Strong, who delivered the judgment of the court,

Bonsteel *v.* Vanderbilt.

as containing a very satisfactory discussion and decision of the same points raised on the trial of this cause. Independent of the authority of that decision, I concur entirely in the opinion there expressed on the points in question.

In any view that may be taken of the question whether the owners of the three several divisions of the line can be held responsible as partners, there was a great deal of evidence received at the trial which was inadmissible. The contract was made at the time of the sale of the tickets, and the language of the ticket admits the payment of the passage money and expresses the nature and extent of the engagement. The ticket is more than a mere receipt. Each ticket conveyed to the plaintiff the right to a second cabin passage in a certain steamship, on her next passage, to a certain port, the one with and the other without a berth. There is no proof of any contract different from that expressed. The statements made by Mr. Vanderbilt, and by others, at the office, previous to or subsequent to the contract, are no part of it, and can have no influence on it. I think the tickets stood upon the same footing and were governed by the same rules as the receipt in *Niles* v. *Culver*, (8 *Barb.* 205.)

The defendants surely did not indemnify against the unhealthfulness of the climate and the thousand annoyances and vexations incident to a transit across the isthmus. The "*auri sacra fames*" which impelled such multitudes towards. the same destination, which induced thousands, as the case shows, to besiege the office of the defendants and to wait in crowds for many hours before daylight to get an early opportunity to secure passage tickets, and which finally incited them to break in the doors of the office in the struggle for the precedency, rendered all under its influence blind to the hazards of the voyage. They rushed on, regardless of the perils of a tropical climate, and insensible to personal suffering. It would have been almost impossible to resist such a pressure and prevent the overcrowding of boats, even if their proprietors had not been stimulated by the same love of gain. No care and no foresight on their part could probably have secured to all, either comfort or health on

the voyage.    Many of the evils were incident to the climate and country and beyond human control ; and a proposal to guarantee in the contract against most of the sufferings complained of, would have been promptly declined.

There must have been great disappointment to the plaintiff in not reaching the place of his destination, and there was also great loss to the defendants by the wreck of their vessel.    But I think the only legal claim growing out of the transaction is the right of the plaintiff to recover against Vanderbilt & Drew the amount paid them for passage money on the North America, with interest.

The verdict should be set aside and a new trial granted, unless the plaintiff stipulates to make a deduction from the verdict which shall reduce it to that amount.

WRIGHT, J., concurred.

WATSON, J., dissented.

New trial granted.

[ALBANY GENERAL TERM, September 3, 1855.    *Parker, Wright* and *Watson*, Justices.]