Parker, J.
I think the defendants were not partners in the business of conveying passengers from New York to San Francisco. There were three separate and distinct divisions of the line j one from New York to San Juan del Norte -; another from the latter place-to San-Juan del Sud, and a third from the place last named to San Francisco. Allen sold the plaintiff three tickets, and sold each as the agent of the owner of one part of the line. The money paid for the tickets was not divided among the defendants according to the number of miles each was to convey, the plaintiff, but each defendant received the fixed price of his ticket. If a ticket had been sold for any one part of the line, as for a passage from New York to San Juan del Norte, the. owners of the other parts of the line would have had no interest in such sale, and would have received no share *31 of the avails. In purchasing the tickets, therefore, the plain-j tiff made, through Mr. Allen, as agent, three separate contracts.!
The contracts were not general, to convey the plaintiff, but special, to give him a passage in the Prometheus to San Juan del Norte, by the Transit Company to San Juan del Sud, and thence on the North America to San Francisco. There was a performance as to the Prometheus and the Transit Company, but a failure as to the North America, because of the loss of that vessel at sea, before the making of the contract. It follows that our inquiries in this case must be restricted to the latter contract. We have nothing to do with the two contracts under which the plaintiff was taken to San Juan del Sud. Vanderbilt <fc Drew are the proper persons to answer for a breach of that contract. They were the owners of the North America, and Allen made the contract as their agent.
It is no good objection to a recovery against them, that another party, the Transit Company, was sued with them as a joint defendant, and that all three were alleged, in the complaint, to have been joint contractors. As it turned out upon the trial that the contract in question was in fact made by two and not by all three of the defendants, it was proper to discharge the Transit Company and proceed against the other two defendants. It was proper to conform the pleadings to the proof, and to give judgment according to the contract, as proved pn the trial, Such a practice could work no injustice, where, as in this case, both parties understood the real question in controversy and came prepared to litigate it. A defendant can never be surprised, under such circumstances.
Nor was it a good reason against a recovery, that the contract was alleged in the complaint to be to carry the plaintiff from New York to San Francisco, and that it turned out in proof to be for only part of the distance, viz: from San Juan del Sud to San Francisco. Here, again, there was no surprise to the defendants, and the plaintiff ought to recover according to his proof. If necessary, an amendment of the complaint could at any time be made.
I think the plaintiff then, under the proof in the cause, was *32 entitled to recover against Vanderbilt & Drew; and the only remaining question is, as to the rule and extent of the damages. They were not of course responsible for any thing that happened before the plaintiff reached the point from which the North America was to start for San Francisco. The loss of the North America was not known to either party at the time of the making of the contract. The one party paid and the other received the passage money, in ignorance of the fact on which the ability to perform the contract depended. There was a failure of the consideration for which the plaintiff paid his money, but it was no more the fault of the defendants than of the plaintiff, that the contract was not performed.
I cannot see that it makes any difference in this "case, that the steamer North America was to sail from a distant port, instead of starting from New York. The contract was the sale of a passage ticket to go on board of her, and nothing more. Suppose a passage ticket had been purchased to go on the Prometheus from New York to Nicaragua, and the Prometheus, at the time of such purchase, had been lost at sea while on her return voyage to New York. On the day for her sailing, the passenger would, for the first time, learn that his contract could not be performed. It cannot be pretended, I think, that he could recover back any damages beyond his money paid. A contract to carry or to convey, when the party engages, unconditionally, to perform, as in Harmony v. Bingham, (2 Ker. 99,) would be binding; and a performance would not be excused by inevitable accident or other unforeseen contingency. But this agreement amounted, I think, to nothing more than a sale of a passage ticket to go in the North America. The defendants did riot engage to carry the plaintiff, unconditionally and at all hazards. They sold only the right to go upon their vessel.
Since the verdict in this cause, all the questions which arose on the trial have been deliberately examined, and decided by this court, sitting in the second district, in the. case of Briggs against these same defendants. The case is reported in 19 Barb. 222, and I refer to the very full and able opinion of Mr. Justice S. B. Strong, who delivered the judgment of the court, *33 as containing' a very satisfactory discussion and decision of the same points raised on the trial of this cause. Independent of the authority of that decision, I concur entirely in the opinion there expressed on the points in question.
In any view that may he taken of the question whether the owners of the three several divisions of the line can be held responsible as partners, there was a great deal of evidence received at the trial which was inadmissible. The contract wTas made at the time of the sale of the tickets, and the language of the ticket admits the payment of the passage money and expresses the nature and extent of the engagement. The ticket is more than a mere receipt. Each ticket conveyed to the plaintiff the right to a second cabin passage in a certain steamship, on her next passage, to a certain port, the one with and the other without a berth. There is no proof of any contract different frpm that expressed. The statements made by Mr. Vanderbilt, and by others, at the office, previous to or subsequent to the contract, are no part of it, and can have no influence on it. I think the tickets stood upon the same footing and were governed by the same rules as the receipt in Niles v. Culver, (8 Barb. 205.)
The defendants surely did not indemnify against the unhealthfulness of the climate and the thousand annoyances and vexations incident to a transit across the isthmus. The “ auri sacra fames” which impelled such multitudes towards, the same destination, which induced thousands, as the case shows, to besiege the office of the defendants and to wait in crowds for many hours before daylight to get an early opportunity to secure passage tickets, and which finally incited them to break in the doors of the office in the struggle for the precedency, rendered all under its influence blind to the hazards of the voyage. They rushed on, regardless of the perils of a tropical climate, and insensible to personal suffering. It would have been almost impossible to resist such a pressure and prevent the overerowding of boats, even if their proprietors had not been stimulated by the same love of gain. No care and no foresight on their part could probably have secured to all, either comfort or health on *34 the voyage, hjany of the evils were incident to the climate and country and beyond human control; and a proposal to guarantee in the contract against most of the sufferings complained of, would have been promptly declined.
[Albany General Term,
September 3, 1855.
There must have been great disappointment to the plaintiff in not reaching the place of his destination, and there was also great loss to the defendants by the wreck of their vessel. But I think the only legal claim growing out of the transaction is the right of the plaintiff to recover against Vanderbilt & Drew the amount paid them for passage money on the North America, with interest.
The verdict should be set aside and a new trial granted, unless the plaintiff stipulates to make a deduction from the verdict which shall reduce it to that amount.
Wright, J., concurred.
Watson, J., dissented.
New trial granted.
Parker, Wright and Watson, Justices.]