Hoffman, J.
I find no mention, in the leading treatises upon the law of insurance, of a policy on passage money. Arnould, Phillips, Marshall and Park give no information upon the subject. The great work of Emerigon, the Commentaries of Par¿essus, of Pothier, and of Boulay Paty, are equally silent. These oracles of the law, foreign or domestic, utter no response to the inquiries we address to them.
It is true that we may discover in the comprehensive language of some writers, authority to embrace such an insurance. “ Everything may be insured, which by law, or by custom possessing the authority of law, is not forbidden.” (Kurike de Assecur, apud, Boulay Paty, tom. 3, p. 356.)
The Commercial Code of France, (art! 334,) has undertaken to define what may be the objects of insurance. In article 347 it excludes various subjects; but it leaves as insurable, and not thus excepted, “ everything capable of a valuation in money, and subject to the risks of navigation.” (See also Pardessus, tom. 3, art. 758.)
We find, however, in some late cases in England, that policies upon passage money have come before the courts, under- a statute of 15 and 16 "Victoria, 1852, (ch. 44.)
In the first place I shall endeavor to elicit, out of the strange attempt to adapt an old cargo policy to an insurance on passage money, the material elements and stipulations of the contract;.
The Company, on the 13th of January, 1855, agree with Mr. Ogden, on behalf of whom it may concern, that they will insure, on a voyage from Liverpool to New York, the sum of $6,395, passage money received by A. Taylor & Co., or their agents in Liverpool, for passengers onboard the ship Driver,for a premium of $191.80. By a clause in the body of the policy, the risk *454 was not to attach until the passengers were engaged and paid for. By a subsequent clause this was modified, so that the risk was not to attach until the passengers were on board. The amount of the passage money was to be named to the Company as soon as ascertained. In case of the detention (of the vessel) by any of the perils insured against, whereby the passengers’ fare or charges became a charge to the underwriters, it was to be estimated at not exceeding, for first cabin passengers $1 per day, for second cabin passengers 50 cents per day, and for third cabin passengers 80 cents per day. When new passengers were substituted for the first, the new earnings were to be deemed salvage to the original underwriters, allowance being made for additional fare as above.
The adventure was to begin from the loading of the goods, and to endure until they were safely landed.
The perils insured against are the usual perils enumerated in a marine policy, with the general clause of all other perils, losses and misfortunes that have or shall come to the hurt or damage of such goods and merchandise, or any part thereof.
The passage money was received in Liverpool on the 12th of February, 1856, and the vessel sailed on the 12th. The amount was named, pursuant to the policy, on the 19th of March, advices no doubt having been received of the passengers being shipped.
We have, then, in this contract, these elements: that the passage money actually received by Taylor & Co., was the subject insured; that the risk commenced when the passengers who paid it were received on board; and an engagement to indemnify the assured for any loss of that passage money, or any part of it, which should be occasioned by any of the perils enumerated and insured against.
Having received the passage money, the subject insured, it is for the plaintiff to establish that he has lost it, or part of it, before he can ask restitution through this agreement of indemnity.
A positive deduction is contemplated by the policy, when, by reason of a detention on the voyage, expenses have been incurred; and, generally speaking, the actual and absolute occurrence of loss or damage by destruction or injury of the thing insured, or payment of money from such damage, is to be shown before "the indemnity can be demanded.
*455 But it is not to be denied that if a liability is clearly fixed, if upon the facts the Court must say it exists, and if the condition of the policy plainly covers that liability as much as if it had been discharged, the amount may be recovered under an insurance. This is the rule declared in Wolfe v. The Howard Insurance Co. (1 Sandf. S. C. R., 124; S. C., 3 Seld., 583.) The duties were judicially decided to be due, and the policy provided for the estimate of the goods at their actual cash value, at the time the loss should happen. Though the duties were unpaid, it was considered that they could be included in the recovery under the policy, as much as the value of goods insured could be recovered, although not paid for.
So in Van Natta v. The Mutual Security Insurance Company, (2 Sandf. S. C. R., 490,) upon demurrer to a declaration" on a policy it was held, that the liability of a common carrier for goods destroyed by fire was an insurable interest; was covered by the general words in a policy, of its being for his account and benefit; and that an averment of a liability to pay to the owners a greater sum than that insured, was sufficient, without averring actual payment
It may be noticed, that no allegation of such a liability is found in this complaint.
Our attention has very properly been called to the analogy of the rule as to-payment of freight in advance. It is insisted that freight so paid may be recovered back, if the goods are not delivered. There can be no doubt of this being the rule under an ordinary bill of lading, for by its terms the contract is to deliver the goods, and the fulfillment of this is a condition precedent to the right to freight. (Phelps v. Williamson, 5 Sandf. S. C. R., 578; Griggs v. Austin, 3 Pick., 20.)
But of course a special agreement may control this rule, and a fair construction of special clauses may show that the parties had agreed that repayment should not necessarily follow the failure of the voyage. (Id.)
Chief Justice Kent, in Watson v. Duykinck, (3 John. R., 335,) traces the general rule in the foreign law, and notices the ordinance of the Marine and the Commentary of Valin to that effect, unless there be a special agreement varying it. The 302d article of the Code of Commerce has followed the ordinance in each *456 particular. Freight is not due for goods lost by tempests, &e., and it must be restored if advanced, unless there is a different agreement.
Accordingly, we find, that if freight is to be paid at all events, or if' it has been paid with the clause that it shall not be repaid in case of shipwreck, (as is permitted by the 302d article of the Code of Commerce,) it may be made the subject of insurance, not by the captain or owner, who has gained it, and for whom it is no longer at risk, but by the freighter who runs the risk of losing it. (Boulay Paty, tom. 3, p. 484.) Valin, Pothier, and in substance Emerigon concur in this.
Hall v. Janson, (4 Ellis & Blackb., 500,) is in accordance with this rule, the case being precisely the converse one in its facts. The policy was “ on money advanced ” to the assured as owner of the ship, “ on account of the freight of the cargo loaded on board her.” It was substantially freight advanced. The ship owner must repay the amount if he failed to carry the goods, although prevented by the perils of navigation. He had therefore an insurable interest.
Yet we see that in Mansfield v. Maitland, (4 Barn. & Ald., 582,) the specialty of a charter party modified this rule. The freighters, it was held, had no insurable interest because the transaction on the bill of exchange was merely a loan to the owner of the ship, for which he had his action. But had it been expressed that the bill was in part payment of the freight, the loss of the ship would have produced a loss to the freighter of the money advanced, and he would¡have had an insurable interest.
Thus, in all these cases, the instruments containing the contract between the freighter and the ship owner were before the Court,. and on them the Court concluded that a plain, legal liability to refund pre-paid freight existed, and when that is concluded, an insurable interest in the ship owner is found, and liability thus judicially demonstrated is held sufficient, and will be so without actual payment.
In Phelps v. Williamson, (ut supra,) thé bill of lading was in proof, and was in the ordinary unconditional form to deliver the goods.
There are several American and English authorities which more directly bear upon the question of pre-paid passage money, *457 and in which, the general doctrine is found, that such passage may be recovered back if the contract is not complied with. But in every case, what was the contract, was the very question to be determined. Upon the instruments and facts of each, the Court settles this question. When this is clearly settled and the liability is ascertained, it may, as before stated, be the ground of a recovery on a policy.
Thus, in the case of Zenobia, (1 Abb. Ad. R., 48, 80; see 86, 94,) the allegation was, that the master contracted to convey the libellant and his family to Hew York, and he paid $150 down, in part for the passage money. This allegation the Court says was proven.
In Cope v. Dodd, (1 Harr. Penn. R., 33,) the receipt given to the passenger was in evidence, and was considered as an engagement to transport 'to Liverpool. In Brown v. Harris, (2 Gray, 359,) the agreed statement of facts showed a contract by the defendant to transport the plaintiff as a passenger, in the defendant’s ship, from San Prancisco to Panama, for the sum of $50, paid in advance. It showed a failure to perform, in consequence of the wreck of the .ship, and that the passenger, was landed at a place less than half way to the port of destination, and that no offer was made to forward him.
In Howland v. The Brig Lavinia, (1 Pet. Ad. R., 121,) the learned judge says, that the same rules are to be applied to passage money as are established on the subject of freight. Ho passage money is due until the vessel arrives at her port of destination, unless otherwise agreed upon. If the passage money has been paid beforehand, it ought to be refunded. So freight on goods is not payable until delivery at the port for which they are shipped.
So in what are termed the Vanderbilt cases, the contracts were in proof and with parol evidence which was competent, were construed to mean engagements to convey the passengers through to San Prancisco. (See 19 Barb., 222; 21 id., 26; and 17 N. Y. R., 306.) In some of these cases the Court below confined the right of recovery to the passage money paid, upon the facts proven. The Court of Appeals sustained a verdict, for expenses beyond this.
In Watson v. Duykinck, (3 John. R., 335,) the paper given by the sloop owner'was, “that in consideration of $100, to be paid *458 immediately, he would suffer the plaintiff to proceed in the sloop as a passenger on the voyage, and to load on board for transportation merchandise to the value of $600.” The money was paid. The vessel was wrecked on her voyage, and the action was to recover back the money. A usage in New York not to refund passage money, if the voyage is begun, was found by a special verdict. The Court decided, however, upon the contract itself, that the action would not lie.
The following English cases will show how entirely dependent upon the particular provisions and terms of the contract between the parties, or upon established usage, is the question of a responsibility to refund passage money paid in advance. (Moffat v. The East India Eng. Co., 10 East., 468; Gillan v. Simpkin, 4 Camp., 241; Yates v. Duff, 3 Car. & Payne, 369; Saunders v Drew, 3 Barn. & Adol., 445; De Silvale v. Kendall, 4 Maul. & Selw., 37.)
I deduce from my examination of the authorities, that when indemnity is sought under a policy, for the loss of the subject insured, not absolutely incurred or actually borne, but contingent and resting upon a liability which will give it practical effect; that liability must be shown to be inevitable, as the necessary result of the law upon the agreement of the parties and the facts of the ease. The question of liability in the present instance will be, in all probability, controlled by the receipt given to the passengers by the agents in Liverpool. That receipt, or any other contract between the parties there made would show whether, under any of the authorities cited, the money was to be refunded under the circumstances which have here occurred. It is to be observed, also, that the complaint does not even aver that the contract was to transport the passengers to New York; only that the vessel was bound to New York, and had on board 344 passengers. I apprehend there would be little difficulty in showing the form and nature of the receipts or agreements which were given; although, of course, they were delivered to the passengers.
Thus the plaintiff has, neither by means of the contracts, by means of any other evidence, nor even by his own allegation, shown or asserted an engagement for the absolute conveyance of the passengers from Liverpool to New York, nor his unconditional responsibility to refund this passage money, if the passen. *459 gers were not carried there, and I think the duty to do this, before he can call upon the underwriters rested with him. I think that he has not done it even upon his complaint, and certainly not upon his evidence. His liability is at this moment not merely contingent in point of fact, but wholly uncertain and undetermined in point of law.
The judgment should be reversed and a new trial granted, with costs to abide the event.
Moncrief, J., concurred in the conclusion, that the judgment should be reversed; Pierrepont, J., dissented.
Judgment reversed, and a new trial granted.