## CHARLES B. DARLING vs. BOSTON AND WORCESTER RAILROAD CORPORATION.

If an arrangement is made between several connecting railroad companies, by which goods to be carried over the whole route shall be delivered by each to the next succeeding company, and each company so receiving them shall pay to its predecessor the amount already due for the carriage, and the last one collect the whole from the consignee, a reception of such goods by the last company, and a payment by it of the charges of its predecessors, will not render it liable for an injury done to the goods before it received them.

CHAPMAN, J.* The defendants are sued as common carriers, for an injury done to certain goods which were carried by them. The goods were taken by the Michigan Central Railroad and brought over that and several intermediate roads to the defendants, and were then brought by the defendants over their road and delivered to the plaintiff in Boston. There was no evidence tending to show that they were injured on the defendants' road; and the plaintiff contends that the defendants are liable if the injury was caused by the negligence of any of the roads on the route.

The law as to the liability of carriers of goods for injuries done to the goods through their negligence is in most respects the same, whether the carriage is by railroads, stages, canal boats, river craft or sea-going vessels, and is also similar to the law as to carriers of passengers and their luggage; and authorities as to all these various species of carriage are usually cited almost indiscriminately.

In the absence of any usage or special contract, a carrier is bound to carry goods only upon his own route, and then deliver them to the consignee designated by his employer. If there is a usage or contract by which he is to deliver them to another carrier to be transported further, he discharges his duty by delivering them in good order and with proper instructions to that carrier. Such a usage may be proved in order to show what his duty is. *Garside* v. *Proprietors of Trent & Mersey Navigation,* 4 T. R. 581. *Hyde* v. *The Navigation Co.* 5 T. R. 389. *Van*

---

* COLT, J. did not sit in this case

*Santvoord* v. *St. John,* 6 Hill, 157. *Farmers & Mechanics' Bank* v. *Champlain Transportation Co.* 23 Verm. 209. The usage as to the manner of doing the business enters into the contract as part of it, in the absence of an express contract.

But the convenience of commerce makes it highly useful to send goods to distant places which can be reached only by several connecting but independent lines of transportation. It is important that this business should be accommodated ; and this may be done either by express agreement or established usage. It is frequently done in this country by express arrangement made by the proprietors of connecting lines with each other, and this is much better than to leave any important matter of this kind to be settled by proof of mere usage. When such arrangements are made, the liability of each line is to be determined by a fair construction of their terms. Such an interpretation is not only required by legal principles, but by considerations of expediency. If each line of carriers is not held responsible according to its contract, injustice is done to its customers, and the business of the public is not properly protected. If it is held responsible beyond this, it is not properly protected, and cannot afford to continue its business without changing its arrangements. And in construing its agreements, express or implied, all that is necessary is that they shall be reasonably clear. The *dictum* that they must be " exceedingly clear " is not reasonable.

Sometimes the arrangements of adjoining routes have been held to constitute a partnership ; as where they have put their earnings into a common fund, and divided it according to the length of their respective lines, under such an agreement as appeared in the case of *Champion* v. *Bostwick,* 18 Wend. 175. Or if they have jointly employed an agent, though they were not partners in other respects, they have been held jointly liable for his misfeasance. *Cobb* v. *Abbot,* 14 Pick. 289.

Or they may transport goods without becoming partners or incurring any joint liability. Where a carrier takes goods that are to be carried to a distant point beyond his line, and must pass over several intermediate lines, his employer finds it necessary to make some arrangement for the payment of freight and

the transportation of the goods over each line. For none of the intermediate carriers are bound to transport the goods till they are paid for it, nor are they bound to deliver them to the next carrier without directions, express or implied. The carrier may become liable to his employer for transporting them over every line to the place of their destination. *Najac* v. *Boston & Lowell Railroad,* 7 Allen, 329. The English courts have held that the first carrier is thus liable unless he makes an express limitation of his liability. But this position has not been sustained in this country. *Farmers & Mechanics' Bank* v. *Champlain Transportation Co., ubi supra. Nutting* v. *Conn. River Railroad,* 1 Gray, 502. But it would be inconvenient and expensive to the owner of the goods to make an express arrangement with each of the intermediate lines, and to make direct payment of the freight to each of them. The connecting lines can easily save him this trouble and expense by an arrangement between themselves. Whether or not such arrangement will make the several carriers jointly liable or each liable for the whole, or limit the liability of each to its own defaults, must depend upon the terms of the arrangement. Courts have had frequent occasion to give a construction to such arrangements. In *Fitchburg & Worcester Railroad* v. *Hanna,* 6 Gray, 539, the arrangement of the plaintiffs was with another railroad and a steamboat company to and from New York. It appeared that, in receiving goods at New York to be carried over the plaintiffs' line, the steamboat company acted as the plaintiffs' agent. It followed, of course, that the plaintiffs could collect the whole freight, but were liable for damage done to the goods by the negligence of the steamboat company; and it was so held. But without such agency it would have been otherwise.

One of the methods adopted is, that the carrier takes the goods from the consignor upon an agreement to transport them over his own line and deliver them to the next line. In such case he acts as carrier and forwarding agent. *Nutting* v. *Connecticut River Railroad,* 1 Gray, 502. *Briggs* v. *Boston & Lowell Railroad,* 6 Allen, 246. *Judson* v *Western Railroad,* 4 Allen, 520. If he receives the whole freight money in advance, yet

limits his liability as carrier to his own line, he deducts the part due him, and acts as agent of the owner in paying over the residue to the next carrier. The owner thus contracts directly with the next carrier through the agency of the first carrier. But payment of freight in advance is generally inconvenient, and as the goods are presumed to be of sufficient value to pay the freight, an arrangement is sometimes made by which each carrier subsequent to the first pays what is due when the goods are delivered to him, and the last carrier collects the whole bill of the consignee. Such an arrangement creates no partnership or joint liability. If a further arrangement is made between the carriers that the freight bills shall not be paid on the receipt of each parcel of goods, but an account shall be kept for each line upon a particular route, and periodically settled, this will not create a partnership or joint liability, for each line charges separately for its own freight. If it is further arranged that each line shall charge only a stipulated rate of freight, so that any customer can be informed beforehand what the amount of freight will be to a given place of destination, this does not create a partnership or joint liability.

Arrangements of this character are convenient to the public, because they enable carriers to transport goods at low rates. They are inconvenient in some respects. They render it difficult to obtain compensation for injuries to goods, because it is difficult for the owner to prove where an injury was done, and, if he can prove it, he may be obliged to carry on a litigation in a distant state. But if the law is adhered to, and contracts are enforced according to their legal interpretation, business will regulate itself, and methods will be discovered to avoid inconveniences.

These general views as to the liability of carriers have prevailed very extensively in this country. *Judson* v. *Western Railroad,* 4 Allen, 520. *Straiton* v. *New York & New Haven Railroad,* 2 E. D. Smith, 184. *Hunt* v. *New York & Erie Railroad,* 1 Hilton, 228. *Briggs* v. *Vanderbilt,* 19 Barb. 222. *Hood* v *New York & New Haven Railroad,* 22 Conn. 1. *Bowman* v *Hilton,* 11 Ohio, 303. *Bissel* v. *Price,* 16 Illinois, 408. *Farmer*

*& Mechanics' Bank* v. *Champlain Transportation Co.* 23 Verm. 209.

The defendants in the present case are the carriers on the last line of transportation who delivered the goods to the consignee. The Michigan Central Railroad Company received them from H. H. Shufeldt, and gave him a receipt, the material part of which is as follows:

" Received of H. H. Shufeldt, consigned to Charles B. Darling, Boston, Mass., the following described packages, in apparent good order, (contents and value unknown,) consigned as marked and numbered in the margin, to be transported over the line of this road to the company's freight station at its terminus, and delivered in like good order to the consignee or owner at said station, or to such company or carriers (if the same are to be forwarded beyond said station) whose line may be considered a part of the route to the place of destination of said goods or packages ; it being distinctly understood that the responsibility of this company as a common carrier shall cease at the station where delivered to such person or carrier ; but it guarantees that the rate of freight shall not exceed fifty-five cents per one hundred pounds and charges advanced by this company."

This contract does not attempt to bind other carriers, except so far as it guarantees the rate of freight. But the guaranty itself is a contract of the Michigan Central Railroad Company with the consignor, and all the stipulations are so framed as to exclude the idea of joint responsibility with other carriers.

It does not appear that there was any express contract between the defendants and the Michigan Central Railroad Company ; but it is stated that the Western Railroad Corporation paid the charges advanced on said goods, covering the freight to Albany, pursuant to usage, and on the arrival of the goods at Boston the plaintiff paid the same to the defendants, with the freight from Albany. The defendants' bill is made out in two items. The first is a charge of the freight from Albany. The second is a charge of expenses. Annexed to it is a bill of these expenses. It is a bill of the New York Central Railroad Corporation, in which the plaintiff is charged with freight of the goods

from Buffalo to Albany in one item, and advanced charges in another item. Thus it appears that the defendants and the Western Railroad Corporation had some connection between themselves, but had no joint dealings with the New York Central Railroad Company, or any road beyond it. Their charges were distinct, and the defendants collected the whole expense of the plaintiff because they had advanced the portion that was due to the other carriers when they took the goods. They are not parties to the contract made beyond Albany, and upon the principles above stated they are not liable for the default of any of the parties to those contracts. *Exceptions overruled.*

*W. Brigham*, for the plaintiff.

*G. S. Hale*, for the defendants.