NEW-YORK,<br>May, 1838.<br><br>Fairchild<br>v.<br>Slocum.

Judgment for plaintiff.

---

FAIRCHILD vs. SLOCUM and others.

Where an association was formed between shippers on Lake Ontario, and the owners of canal boats on the Erie Canal for the transportation of goods and merchandize between the city of New-York and the ports and places on Lake Ontario and the river St. Lawrence, and a contract was entered into by the agent of such association for the transportation of goods from the city of New-York to Ogdensburgh on the river St. Lawrence, and the goods were lost on Lake Ontario; it was held that all the defendants were answerable for the loss, although some of them had no interest in the vessel navigating the lake, in which the goods were shipped.

And it was further held, that notwithstanding an exception in the contract of the dangers of the lake, that the association were answerable for any loss occasioned by negligence or the want of ordinary care in the lading of the goods or the navigating of the vessel.

Where in such contract the dangers of the lake were excepted, and the plaintiff in his declaration had omitted to state such exception, it was held that the variance was fatal.

THIS was an action of assumpsit against the defendants as common carriers, tried at the Jefferson circuit in December, 1835, before the Hon. HIRAM DENIO, then one of the circuit judges.

In November, 1832, a contract was entered into in the city of New-York by one Samuel T. Armstrong as the

agent of the defendants, with an agent of the plaintiff for the transportation of a quantity of merchandize belonging to the plaintiff, from the city of New-York to Ogdensburgh on the river St. Lawrence ; it was stipulated, that if the canal froze up before the goods could be got through, the defendants were to be excused from delivering them until the next spring, and the dangers of Lake Ontario were excepted. The defendants had represented themselves to the public as a transportation company doing business under the name of " The Albany and Oswego Line," carrying freight between Albany and Oswego on the Erie canal, and keeping good and substantial vessels plying between Oswego and Ogdensburgh, as well as all other ports on Lake Ontario, &c. Three of the defendants, viz. J. T. Trowbridge, E. Trowbridge and C. H. Green, were partners carrying on business at Oswego under the style of J. T. Trowbridge and Co.; they owned vessels and forwarded goods from that place to the various ports and places on Lake Ontario and the St. Lawrence river ; two others of the defendants, H. N. Walton and T. Willits, were also partners at Oswego and engaged in the same business as J. T. Trowbridge & Co. Three others of the defendants (the whole number being eight) viz. J. Slocum, E. Foster and H. Putnam, resided at Syracuse, on the canal route from Albany to Oswego, and were severally interested in " The Albany and Oswego Line" of canal boats, but had no interest in the vessels or the forwarding of goods on Lake Ontario ; and on the other hand, J. T. Trowbridge & Co. had no interest in the canal boats. The goods were forwarded from New-York to Albany by a line of tow-boats, the defendant paying the freight to the owners of the boats ; from Albany to Oswego they were forwarded by the defendants' line of canal boats, and at the latter place were safely delivered and shipped for Ogdensburgh on board a schooner called the Caroline, owned by the defendants J. T. Trowbridge & Co. The Caroline sailed from Oswego in the evening of the second day of December, and about 12 o'clock of that night, was capsized in a sudden squall of wind, by which accident some of the goods were lost and others damaged, and for

the injury thus sustained this action was brought. The two <span>NEW-YORK, May, 1838.</span>
principal questions litigated on the trial were: 1. Whether
Armstrong had authority to contract for carrying the goods     Fairchild
*beyond* Oswego; and 2. Whether the loss was occasioned       v. Slocum.
by improperly loading or navigating the vessel. The first
question was submitted to the jury upon the evidence which
had been adduced, and as to the second, the judge, after
calling the attention of the jury to the testimony in the case,
instructed them that notwithstanding the exception of the
*dangers of the lake,* the defendants were answerable for
*negligence,* not merely *gross negligence,* but for the want
of that ordinary care which a prudent man would exercise
in conducting his own affairs. The judge also decided that
there was *no variance* between the declaration and proof,
although in neither count of the declaration, was there any
mention of the exception of the dangers of the lake. The
jury found a verdict for the plaintiff with $3527,17 damages.
The defendants move for a new trial.

*B. Davis Noxon & S. Stevens,* for the defendants.

*B. F. Cooper & J. A. Spencer,* for the plaintiff.

*By the Court,* BRONSON, J. The defendants insist, *first,*
that no *joint contract* was proved to carry the goods *beyond*
Oswego, and that as to Lake Ontario the defendants were
not carriers, but were at most only *forwarders* by the owners
of lake vessels; *second,* that for a loss on the lake, they
could only be liable on proof of gross negligence; *third,*
that no want of diligence or care was shown; and *fourth,*
that there was a fatal variance between the declaration and
the contract proved.

That Armstrong, acting as the agent of the defendants,
contracted to carry the plaintiff's goods from New York to
Ogdensburgh was proved beyond all doubt; and the only
question is, whether he had authority from *all* the defend-
ants to make such a contract. On a careful consideration of
the evidence, I think the jury were fully warranted in finding
for the plaintiff on this point, as against all of the de-
fendants.

It is a matter of no moment that the defendants were not interested in the tow-boats by which the goods were forwarded from New York to Albany; nor is it material as to the result of this case, that they had no joint interest in the vessels employed on the lake. They were engaged in the business of carriers, and ˹whether they used their own boats and vessels, or employed the vessels of other persons to carry for them on some part or even all of the route, can be a matter of no consequence. It is enough that they received the goods on an undertaking to carry and deliver them at Ogdensburgh, and it was not for the plaintiff to enquire in what particular manner they intended to perform the contract. This is not like the case of *Roberts* v. *Turner*, 12 Johns. R. 232. There the defendant was a mere warehouse keeper and forwarder of goods. The course of business was, for him to receive merchandize or produce at his store, and forward it by boatmen on the Mohawk river. The defendant was not a carrier, but an intermediate agent between the owner and the carrier, and the court said he had performed his whole undertaking when he gave the goods in charge to an experienced and faithful boatman. In the case at bar, the agreement of the defendants was, not that they would deliver the goods to a carrier on Lake Ontario, but that they would themselves carry and deliver the property at Ogdensburgh.

Although by the contract, the defendants were not answerable for the dangers of Lake Ontario, yet, if the loss happened through the want of ordinary care or skill in lading or navigating the vessel, I think they would be liable. Did the loss happen through negligence? The schooner was seaworthy, and captain Tyler, the master was an experienced and very competent officer. There was the usual number of hands, though some of the witnesses thought it would have been more prudent to have had another in addition to those on board. The vessel left Oswego with a fair sailing breeze, and every thing promised a successful voyage. According to the evidence of the master and other persons on board, the schooner was capsized by a sudden squall or gust of wind, and the accident could not have

been avoided.   The plaintiff attempted to prove that the
deck load was too heavy, and was placed upon sleet, or ice,
that there were not hands enough on board for the safe navi-
gation of the vessel, and that at the time of the accident
the watch was insufficient.  He also insisted that there was
negligence in not barring the hatches, and in permitting the
vessel to broach at the time the squall struck her.   Some
of these questions had no possible connection with the loss
which happened, and cannot therefore affect the liability of
the defendants.   The ground on which the plaintiff mainly
relied was, that the evidence would warrant the jury in
saying that the loss happened in consequence of placing
too much of the cargo on deck.   [Here the judge reviewed
the evidence in the case, and then proceeded as follows :]
After a patient and laborious examination of the testimony,
I am satisfied that the verdict is clearly against the weight
of evidence.   It is not enough that some witnesses think it
would have been more prudent to have had another hand,
a more efficient watch, or to carry a smaller load upon
deck.   Nor is it enough that some men of great prudence
would have acted with more abundant caution.   It is con-
ceded on the part of the plaintiff that the defendants are
only answerable for a loss happening through the want of
that diligence which is usually exercised by men engaged
in navigating the lake ; that they were only bound to ordi-
nary care.   It is I think, impossible to read the case with
attention, without being strongly impressed with the opin-
ion that the loss was occasioned by one of the perils of navi-
gating the lake, instead of the alleged negligence of the
master ; and that the defendants have been made answera-
ble for the winds and the waves, against the express stipu-
lation of their contract.

There was a variance between the contract proved and
that laid in the declaration.  None of the counts mention
the exception of the dangers of Lake Ontario.

I think there should be a new trial; that the plaintiff
should be allowed to amend his declaration, and that the
costs of the former trial should abide the event of the suit.

Ordered accordingly.