## Case No. 3,422.

### CROSBY v. GRINNELL et al.

[9 N. Y. Leg. Obs. 281.]

District Court, S. D. New York. March Term, 1851.

DUTY OF CARRIER—CUSTOMS AND USAGE — PERIL OF THE SEA — BLOWING — SALE OF DAMAGED CARGO.

1. Sea-going vessels, transporting merchandize for hire, are common carriers, and subject

[1] [Reported by Hon. Charles Sumner.]

to the responsibility of such, when that responsibility is not qualified by an express contract or reservation. Courts never assume to engraft exceptions, beyond those indisputably settled by law, to the absolute responsibility of common carriers, any more upon water than upon land.

2. The responsibility of a common carrier may be qualified by a custom or usage of established notoriety.

3. If the parties annex no qualification by agreement to the undertaking of the master, the marine law applies none. The master is bound absolutely to deliver the cargo as received, unless prevented by the act of God or public enemies.

4. Blowing of a vessel is a peril of the sea, and not, like sweating, an incident to navigation which cannot be prevented or avoided by human means.

5. A sale of the damaged cargo by the respondents, at private sale, is not one binding the libellant. It should have been sold at auction, with notice to the ship owner, or at least an appraisement, with notice, should have been made.

This action was brought by [Joshua Crosby] the master of the brig Frederick against [Moses H. Grinnell and others] the consignees of certain hides and coffee shipped under two bills of lading. The bill of lading was special, and without the usual exception of "perils of the sea." The cargo was well stowed, and came out in good order, with the exception of about one hundred hides, which were wet. The consignees received the cargo, and disposed of it at private sale, deducting an estimated sum for damages to the hides. When the libel was filed they tendered the freight earned on the cargo, in part, but claimed to set off, by way of recoupment, the damage upon the hides, to the claim for freight.

E. C. Benedict, for libellant.
D. Lord, for defendants.

BETTS, District Judge. This action is brought by the master of the brig Frederick, to recover the balance of $697.29 freight on a shipment of hides and other merchandize of the defendants, from the port of Rio Janeiro to New York. Part of the hides, when delivered here, were found in a damaged condition from wet or moisture. The libellant insisted that the hides were well and securely stowed in the ship, and, if injured any way on the passage, it was owing to inherent defects in the articles, or to perils of the sea, or the blowing of the vessel, and that for none of those injuries the ship owner is responsible.

The defendants admitted the appellant's right to freight for coffee as charged, $567.42, and to $29.97 for the hides, over and above the damages and deterioration sustained by them, which is claimed to be $100, and pleaded a tender of payment of those two sums previous to the commencement of this suit, and insist the libellant is answerable to them for the injury the hides had received, equal-

ling the balance of the freight money demanded. The main controversy related to the question whether the libellant is liable for the injury the hides had received. If he is, he denies that the amount of that injury and his responsibility has been ascertained in a manner to bind him.

Another point between the parties is, whether the libellant has the right to apply the payment of $597.39 made to him by the respondents to the satisfaction of the freight of the hides specifically, and the balance over to the coffee, and thus leave no disputable matter between the parties; or whether the payment must first go to extinguish the freight for coffee, leaving the question open in this action as to his liability for the injury to the hides, and whether that injury is equal to the balance of freight claimed. The answer insists that the libellant took upon himself the responsibility of a common carrier, and is not discharged from it, if he proves the hides damaged by perils of the sea, or any other cause not being an act of God; and that the respondents are entitled to countervail the demand of the libellant for freight, by recoupment of the damages sustained by the hides. The cargo consisted of coffee, rosewood, and about 1,100 hides, and was all discharged in good order, with the exception of 107 hides somewhat wet and damaged. The stowage was proved to be good, and conformably to the usage of trade, except, in regard to the hides, there was evidence to show it was not proper to lay them on rosewood, and some witnesses asserted it was prudent and usual, if not necessary, in stowing a cargo of hides, to place a lining of hides between the main cargo and the skin or sides of the vessel.

There is nothing in the evidence to justify the inference that those hides were injured by being stowed on rosewood. There was no indication of wet or moisture in the wood when the cargo was discharged. So, also, the vessel came into port staunch and tight, and performed other voyages to the West Indies, and brought return cargoes of sugars undamaged, without being repaired; and from those circumstances it is justly inferred, she did not damage the cargo on the voyage in question by direct leakage. It might be uncertain, upon the proofs in court, whether all the damage to the hides occurred at sea; a witness to that point (Bullard) estimates that the ratio of 40 to a 1,000 of hides imported from Rio Janeiro, &c., receive shore damages before shipment to the extent of the injury these had sustained, or approximating to it; unless the terms of the bill of lading preclude the libellant raising the question in this case as it now stands.

The witnesses ascribe the wetting of the hides on the passage, not to letting in water by leakage on the hides, but to the blowing of the ship, which arises from throwing the water lying about the kelson, upon the sides, by the rolling and pitching of the ship, and thus forcing it through the skin or ceiling upon the cargo. A lining of mats was placed along the sides of the ship, between them and the hides, to prevent that injury; but it was proved that mats so placed are not sufficient security, unless of good quality, and laid thick, and that hides are usually required for lining, to prevent the water or dampness penetrating to the body of the cargo. Several witnesses, experienced in that trade and the commerce of this port, testified that damages to cargo, arising from the blowing of the ship, have never, within their knowledge, been charged upon the ship owner; they could not say there was any established usage throwing the loss upon the shipper or underwriter.

1. It is an incontrovertible point of commercial law, that sea-going vessels, transporting merchandize for hire, are common carriers, and subject to the responsibility of such, when that responsibility is not qualified by an express contract or reservation. Ang. Carr. §§ 87–91; 2 Kent, Comm. (6th Ed.) 599, 608; Hale v. New Jersey S. Nav. Co., 15 Conn. 539. The only reported case in the New York courts, which has called this doctrine in question, is Aymar v. Astor, 6 Cow. 267. Judge Story and Chancellor Kent regard that case as anomalous, and that its principle is directly reversed by subsequent decisions in the same court and court of errors. 2 Kent, Comm. (6th Ed.) 509, note; Story, Bailm. § 497; McArthur v. Sears, 21 Wend. 193.

The notion that the common-law doctrine is founded upon the custom of the realm, and has no operation out of the realm, is not supported by the English authorities, and is nowhere sanctioned by the decisions of the courts in the United States. Ang. Carr. § 153, note. On the contrary, it is directly repudiated in this state. Elliott v. Rossell, 10 Johns. 1. The libellant was, accordingly, answerable, as an insurer, for the safe delivery of the goods shipped to the respondents, except in so far as that liability is qualified by his contract, express or implied. The bill of lading executed by the libellant does not correspond in form with those in use in England and this country. It is dated Rio Janeiro, Sept. 23, 1848, and is as follows: "I, the undersigned, captain of the American brig Frederick, at present anchored in this port, to proceed to the port of New York, being my port of discharge, declare that it is true, I have received and stowed within the decks of said vessel perfectly dry and well conditioned, account of Jo Tenio Puto, eleven hundred and eighty dry hides, with hair on, on account and risk of whom it may concern, being marked and of the weight of and quantity expressed in the margin, which I bind myself to deliver at the aforesaid port, in the name of the aforesaid, to Grinnell, Minturn and Co., receiving for freight one half cent per pound with five per cent. premium, and for fulfillment thereof, I bind per-

son, goods, and said vessel, and therefore have signed four bills of lading, all of equal tenor and date, of which one being fulfilled, the others shall have no validity. (Weight unknown.) (Signed) Joshua Crosby."

This engagement being entered into, to be performed in New York, it is, as to its nature, obligation and interpretation, to be governed by the law of the place of performance. Story, Confl. Laws (3d Ed.) § 280; 2 Kent, Comm. (6th Ed.) 459, note 6. If the contract is not to be construed as rendering the master an insurer for the safe delivery of this cargo by express agreement, it manifestly in no way curtails his obligation as a common carrier under the law of this state. 19 Wend. 329; 7 Hill, 292.

For the libellant, it is contended that the shipment of goods on a contract of affreightment carries with it the implication that the ship is not responsible for perils of the sea, and that a bill of lading containing such qualification is not necessary to exempt the ship owner from liability for any damage to goods coming within the description of losses of that character. No case has been produced in which that principle has been adjudicated. The references above given show that no such doctrine entered into the decisions made upon this subject, or has been recognized as law by the courts.

The bill of lading, or other stipulation outside the act of affreightment, is looked to to relieve the ship owner or master from the stringency of the obligation imposed upon him by law on his undertaking to transport goods for hire. Abb. Shipp. 322, 382, note 1; Citizens' Bank v. Nantucket Steamboat Co. [Case No. 2,730]. The courts never assume to engraft exceptions, beyond those indisputably settled by the law, to the absolute responsibility of common carriers, any more upon water than upon land.

It is further urged for the libellant that the damage received by the hides in this instance, if not shore damage affecting them when shipped, was incurred from the blowing of the ship on the passage, and that such injury does not arise from perils of the sea, or any culpable act or omission on the part of the ship master or owner. That it is one necessarily incident to water carriage, and is no way caused by leakage of the ship, or fault of stowage, and falls within the principle of the case of Baxter v. Leland [Case No. 1,124], decided in this court in November, 1848, in which the court held that the owner was not liable to the shipper for damage to cargo from the sweating of the ship on the voyage.

A bill of lading was executed in that case, and contained the exception of liability, because of "the dangers of the sea," or "dangers of navigation." The court held those forms of expression were equivalent to, and imported no more than, the usual phrase, "perils of the sea," but that, on the proofs as to the cause of sweating in ships, the injury could not be properly ascribed to a peril of the sea.

The court said, tempestuous and violent weather tends to increase the difficulty, but does not produce it; all the testimony showing that it occurs in quiet and smooth voyages, where there is no straining or unusual rolling or pitching of the ship. Its causes are probably atmospheric, but whether ascribable to that source, or others more occult, it cannot be properly classed with perils of the sea. It is of ordinary occurrence, scarcely failing to exist in any case of navigation from New Orleans to northern ports in the cold seasons of the year. It is a quiet, secret exhalation, generated in the hold of the vessel, in no other known way produced by the winds and waves and navigation, than that those are agents and accompaniments of her transit out of a warm into a cold climate. Although, upon these considerations, the court did not hold the ship acquitted of her responsibility as a common carrier, under the exceptions in the bill of lading, yet it was added that the testimony in the cause proved a uniform and well understood usage in the trade between New Orleans and New York, that injuries received by goods from the sweating of the vessel should be borne by the goods alone. That case, then, in its ruling features, would meet this no farther than to decide that the ship is not exonerated from responsibility for the loss from sweating because exempted from liability for perils of the sea, (if this vessel could be regarded entitled to such exemption,) but that the damage falls upon the shipper because of the character of the injury intrinsic or inherent to navigation from a high to a low temperature, without regard to the condition of the ship or the stowage of the cargo; and also because, from the usage of trade between New Orleans and New York, well known to persons concerned in it, the goods, and not the ship, bear the loss under such circumstances.

I think the libellant fails proving, in this case, that the blowing of a ship is, in its character and cause, analogous to sweating. It is, doubtless, as usual, or more so, because its effects are no way dependent upon change of climate, and, to a greater or less degree, occurs in all voyages. The marine surveyors examined by the libellant testify it is occasioned by water in the bottom of the ship, thrown up between the sides and ceiling by the rolling of the ship, and thus forced through upon the cargo. This water generally lies below the reach of the pumps, but the damage more usually occurs because of the insufficient pumping of the vessel. There is no evidence giving a different account of the cause of blowing. Some of the witnesses for the claimant impute the damage in this instance to sweating or blowing. They, however, state that the stowage of hides on wood, particularly rosewood, occasions a sweating often very injurious to them. It is to be re-

marked, upon this testimony, that, in supposing the damage to have arisen from either sweating or blowing, the witnesses for the claimants all ascribe it to improper stowage, both in employing rosewood for dunnage, and in omitting to put a sufficient lining between the hides and the dunnage and the sides of the ship.

So, also, the marine surveyors say it is necessary, to protect a cargo of hides from blowing, that a lining of hides should be put between them and the sides of the vessel, of several inches thickness. The evidence offered by the libellant, therefore, affords no ground for bringing this case within the principle recognized by the court in Baxter v. Leland [Case No. 1,124], for the witnesses agree in representing it a damage which might be prevented by proper stowage, or which, if the stowage is proper, is borne by the shipper or underwriter, because it arises from perils of the sea. Captain Thompson, the marine surveyor, says underwriters pay for damages occasioned by the blowing of the vessel, as sea damage. To the same effect is the testimony of Mr. Foster, a commission merchant, engaged in the trade; and the other two witnesses, Captain Candee and Mr. Nickerson, go no farther than to say the owner of the goods bears the loss when there is a certificate of the marine surveyors that the stowage is good. Mr. Foster, a partner of Nickerson, qualifies this statement by adding that the owner bears the loss unless it amounts to an average, and then it is paid by the underwriter. These witnesses, evidently, therefore, are speaking of cases in which the ship owner is exempt, under the bills of lading, from losses arising by perils of the sea. The responsibility of a common carrier, may, no doubt, be qualified by a custom or usage in a particular trade, or between particular ports of established notoriety. The implied assent of parties to the usage will properly be regarded of like force between them, as an express agreement. Baxter v. Leland [supra], and cases cited.

The libellant claims that such custom notoriously prevails in respect to the transportation of hides, particularly from South American ports to the United States. He, however, furnishes no other evidence of it than that above recited, and evidently the witnesses do not speak of a usage in any other sense than as distinguishing the instances in which the consignee or underwriter bears the loss because it results from perils the ship is exonerated from, under the contract of affreightment. To give a custom the effect of controlling the ordinary rules of law, there must be the most clear and satisfactory evidence of its long continuance and notoriety. The Reeside [Case No. 11,657]; Ang. Carr. § 230. It does not appear to me the evidence in this case approaches that requirement, or can be considered as pretending to anything beyond showing the usual method of adjusting losses of this description, when the goods are delivered under an ordinary bill of lading. The bill of lading executed by the master on receiving the hides in question on board his ship was special and peculiar in its terms. It declares it to be true that the libellant has received and stowed within the decks of the vessel the hides in question, perfectly dry and well conditioned, which he binds himself to deliver at the port of New York. There is, as already observed, in this, no qualification of his full responsibility as a common carrier, but, on the contrary, an explicit recognition of that obligation by the libellant in the express language of his undertaking, and in my opinion he must, in every view of this case, be answerable to the claimants for the damages received by the hides on the voyage.

The bill of lading admits the hides were perfectly dry and well conditioned when laden on board. This acknowledgment, however, as between the immediate parties to the bill of lading, is not conclusive (Abb. Shipp. 324), though prima facie evidence of the facts (7 Mass. 297). It is still competent for him to prove, as against the shippers, a mistake of fact or misinformation in that respect. The hides were put on board in the name of the claimants, and the engagement, by the bill of lading, is to make the delivery to them, so that the controversy is in effect between the shipper and ship owner. In such circumstances the libellant would be allowed, against the prima facie evidence of the bill of lading, to prove the actual condition of the merchandize at the time of shipment. The acknowledgment in the bill of lading by no means necessarily imports the personal knowledge of the master of the condition of the goods. He may have acted on the report of an agent of the ship, or of the shipper himself, and the law permits him to defend himself by showing the facts as they actually existed.

The method adopted by the claimants for fixing the amount of loss is not one binding the libellant. The property should have been sold at auction, with notice to the ship owner or master, or at least an appraisement, with notice, should have been made, in order to affect him. Loewig v. The Columbus [Case No. 8,463].

The freight on the coffee was $567.42, and on the hides $129.87, in the aggregate $697.29. Of this sum the defendants admitted to be payable $597.39, which they tendered and paid into court. The libellant sues for the whole freight, and the tender and payment must be regarded as made upon the gross freight, and he is not entitled to divide it, and apply part to the payment of the entire freight of the hides, the residue pro tanto for the coffee, and then set up the unsatisfied balance as coffee freight. The whole freight money demanded of the claimants included that for coffee and for hides. The claimants denied they were liable for the whole amount demanded, and it does not lie with the libellant to appropriate the tender and payment

to the extinguishment of the contested demand, and then sue for the undisputed residue as the balance due him. By receiving the payment on the general account, and pursuing his action to recover beyond it, the case is open to the defendants to prove the amount paid justly extinguishes all they are legally liable to pay.

In my opinion, the defendants are entitled to compensation, by way of recoupment against the demand of the libellant, for any damage or deterioration of the hides incurred on the voyage. A reference must be had to ascertain that damage.