C. S. C. CHRISTENSON et al.

*vs.*

THE AMERICAN EXPRESS CO.

An express company engaged generally and publicly in transmitting for hire, goods from place to place, receiving to its own use the entire charges for transportation, employing a messenger whose business it is to accompany the goods as they are being transmitted, to take general charge of the same, attend to their transhipment, and to their delivery to the company's local agent at the point of destination, and establishing at different points to which its business extends local offices at which an agent is stationed, whose duty it is to receive goods transmitted, and deliver the same to the consignee, is a common carrier, although it owns no vehicles except such as are kept at its local offices, for local purposes, and although its practice is to transmit goods by steamboats, railroads, coaches, &c., owned and controlled by other parties.

The plaintiffs' consignors at New York delivered to the defendants two boxes of tea, consigned to plaintiffs at Mankato, and at the time of such

Christenson et. al. v. American Express Co.

delivery took from the defendants the following receipt, viz: "American Express Company—express forwarders and foreign and domestic agents. Principal office Nos. 57, 59 and 61, Hudson street. Branch office, 124 Broadway, and 542 Broadway. New York, April 29, 1867. Bass and Clark delivered to us two chests of tea, marked Christenson & Bro., Mankato, Minn., which we are to forward to our agency nearest or most convenient to destination, only perils of navigation and transportation excepted, and it is hereby expressly agreed, and is part of the consideration of this contract, that the American Express Company are not to be held liable for any loss or damage except as forwarders only, nor for any loss or damage of any box, package or thing, for over one hundred and fifty dollars, unless the just and true value thereof is herein stated, nor for any loss or damage by fire, the acts of God, or of the enemies of the government, the restraint of government, mobs, riots, insurrection, pirates, or from any of the dangers incident to a time of war, nor upon any property, or thing, unless properly packed and secured for transportation, nor upon any fragile article consisting of, or contained in glass. For the company, Spence."

At common law, a common carrier is an insurer of the goods intrusted to him, and is responsible for all losses to the same, save such as are occasioned by the act of God, or the public enemy. It is competent for a common carrier to modify and limit his common law liability by special agreement with the owner of the goods, but he is not permitted to exonerate himself from liability for his own negligence, or the negligence of the agents whom he employs to perform the transportation, and notwithstanding his special agreement, he is responsible for ordinary neglect; that is to say, for the want of ordinary diligence. The special agreement may be in the form of a special acceptance of the goods by the carrier, as by a unilateral bill of lading or receipt. To bind the owner of the goods by the terms of the special acceptance, he must expressly assent to it, or it must be brought home to him under circumstances from which his assent is to be implied. It appearing in the case at bar, that simultaneously with the delivery of the goods to the carrier, the receipt before recited was delivered to the plaintiffs' consignors, and that it was produced as evidence by the plaintiffs upon the trial; *Held*, in the absence of evidence to the contrary, that it is to be presumed that the consignors were the plaintiffs' agents to contract for the transportation of the goods, and that the delivery of the receipt to the consignors must be held to be equivalent to a delivery to plaintiffs. *Held* further, that as there is nothing tending to show that any objection was made to

Christenson et al. v. American Express Co.

the terms of the receipt, or that they escaped attention, the assent of the consignors, the plaintiffs' agents, and of the plaintiffs themselves, through their agents to the same, is to be presumed.

The fact that defendants style themselves in the receipt, " express forwarders," and that they agree to " forward" the goods, does not necessarily give them the character of simple forwarders, nor prevent them from being treated as common carriers. While the language " only perils of navigation and transportation excepted," embraces more than "the acts of God," it goes no further than to exempt the carrier from liability for such perils as could not be foreseen, or avoided, in the exercise of care and prudence. While it may be proper to hold a snag in one of our western rivers to be a peril of navigation, if a vessel is wrecked upon one through the carrier's negligence, or the negligence of those in his employ, the carrier is not absolved. The clause in the receipt by which it is provided that the defendants are " not to be held liable for any loss or damage except as forwarders only," does not have the effect to limit the responsibility of the defendants, to that of mere forwarders. Notwithstanding the clause, the defendants are liable for loss or damage occurring through their own negligence, or the negligence of the agents employed by them in the transmission of the goods.

This action was commenced in the district court for Blue Earth county, and was tried before a referee, who states the issues and his findings of facts in the case as follows:

This is an action brought by the plaintiffs against the defendant, the American Express Company, as a common carrier of goods, wares and merchandise, and charging that the said defendant as such carrier, on the 29th of April 1867, in consideration of a reasonable compensation to be paid therefor, undertook and agreed with the plaintiffs to safely carry two chests of tea belonging to said plaintiffs, from the city of New York to Mankato in the State of Minnesota, and deliver the same to them at said last named place, and further charging that said defendant did not deliver the said tea, and that the same by means of the negligence of the defendant was lost, to the damage of the

plaintiffs of two hundred dollars, for which sum they ask judgment.

The answer denies that the defendant is a common carrier, and also denies that the defendant undertook and agreed to convey the said goods of the plaintiffs from New York to Mankato, and it also denies all negligence on the part of the defendant in reference to the said goods of the plaintiffs.

The answer further alleges that defendant's business is solely that of forwarder of goods, and that it has never held itself out as a common carrier, nor done any business as such, that its mode of business as forwarders, is to send an agent along with each package of goods so forwarded by it, whose duty it is to attend to the transhipment of the goods, and that at the various points along its route it has local agents to receive the goods forwarded, and to deliver the same to the proper consignees, and that defendant had no vehicle of its own for forwarding goods, but relied on common carriers, doing business between the place of the shipment of the goods and the place of their destination.

The answer further states, that on the said 29th of April, the defendant, as a forwarder of goods, received of Bass & Clarke, the consignors of the said tea, at the city of New York, two chests of tea, to be by it forwarded to Mankato, and that at the time of such delivery, it was expressly agreed that the defendant should not be liable for damages arising from perils of navigation or transportation, or for acts of God or for any loss or damage, except as forwarders, and that in no event was defendant to be liable in a greater sum than one hundred and fifty dollars,

It is further averred that said defendant received said goods on the above terms, and that when the same reached St. Paul they were transhipped on board the steamer Julia,

which was at the time engaged in navigating the Minnesota river; that while said boat was making its trip from St. Paul to Mankato, and while under the management of skillful pilots and officers, it ran upon a sunken and unknown snag in the river, whereby the boat and cargo were lost. The answer sets up the further defense that, by the custom of the trade, and the usual course of dealing among merchants, losses arising from the loss of vessels on sunken and unknown snags, rocks and shoals, are deemed to proceed from the act of God and the perils of navigation, for which carriers are not liable. The issues thus formed by the pleadings, and the evidence introduced in the case render necessary the examination of several questions of great importance, as well as of considerable difficulty.

As matter of fact, I find that on the 29th day of April, 1867, at the city of New York, Bass & Clark, the consignors of the tea in question, delivered to said defendant two chests of tea, consigned to Christenson & Bro., Mankato, Minnesota, and at the time of such delivery took from the said defendant the following receipt:

"American Express Company, express forwarders, and foreign and domestic agents. Principal office, Nos. 57, 59 and 61 Hudson street. Branch offices 124 Broadway and 542 Broadway.

NEW YORK, April 29, 1867.

Bass & Clark delivered to us two chests tea marked Christenson & Bro., Mankato, Minn., which we are to forward to our agency nearest or most convenient to destination, only perils of navigation and transportation excepted, and it is hereby expressly agreed, and is part of the consideration of this contract that the American Express Company are not to be held liable for any loss or damage except as forwarders only, nor for any loss or damage of any box,

package or thing for over one hundred and fifty dollars, unless the just and true value thereof is herein stated, nor for any loss or damage by fire, the acts of God, or of the enemies of the government, the restraint of government, mobs, riots, insurrections, pirates, or from any of the dangers incident to a time of war, nor upon any property or thing unless properly packed and secured for transportation, nor upon any fragile article consisting of or contained in glass.

For the Company,          SPENCE."

I find that when the goods in question reached St. Paul, they were by the defendant placed on board the steamboat "Julia," a boat belonging to the Northwestern Union Packet Company, to be transported to Mankato, Minnesota. The boat at the time of the accident was staunch, strong, and in a good condition. The defendant at the time the tea was placed on board of said boat at St. Paul, sent its agent, known as the express messenger, along with said goods to accompany them to Mankato, and there make delivery of the same to the local agent of defendant. This messenger was on board the "Julia" at the time of the happening of the accident to said boat. On her trip up the Minnesota river, and within about five miles of Mankato, on the 10th day of May, 1867, at five o'clock in the morning of said day, the "Julia" ran upon a snag, which at the time was covered by twenty inches water. The snag was about twelve inches in diameter. It drove a hole through the fore part of the boat, and ten minutes after the accident the stern of the vessel sunk in twelve feet water, the fore part did not sink, as the snag that had run into the boat prevented it. The pilot of the boat was at the time at his place at the wheel, the captain was in bed asleep; the express messenger who had been placed in charge of the express freight, including the tea in question, was at the time of the accident in his state-

room asleep. The boat was on its fifth trip up the river that spring, and at the time of the accident was in or near the channel of the stream. The boat was running at the rate of four or five miles per hour when it struck the snag. On the next day after the accident the tea was taken to Mankato in a damaged and worthless condition. One chest was brought to Mankato and placed in charge of the defendant's agent there, and was by him tendered to the plaintiffs, who refused to receive it on account of its damaged condition. The other chest of tea was never tendered or offered to plaintiffs, but was taken from the boat to Fletcher's warehouse and there sold. After the first chest had been tendered to said plaintiffs, and by them refused, it was returned by the defendant's local agent to defendant's office at Saint Paul. The tea at the time of the delivery of the same to the defendant was worth one hundred and eighty dollars ($180.)

The tea in question and the other express freight was stored in the deck-room of the "Julia," back of the boilers, and when the boat sank as stated above, the chests containing the tea were submerged in the water.

I further find, that the place where the accident occurred was at a sharp angle or bend of the river, that the water was at the time three or four feet higher than it had been during the preceding winter; there was a strong current at the time running about ten miles per hour. In this bend of the river there was, in the words of one witness, "a nest of snags," extending from where the boat struck to the distance of one hundred or one hundred and fifty feet up the stream; within this space of one hundred and fifty feet, there were ten or fifteen snags. These snags had been known for years. Both the pilot and the captain of the "Julia" testify to their knowledge of the existence of these·

Christenson et al. v American Express Co.

snags in the bed of the river, and that the boat at the time she struck was within one hundred or one hundred and fifty feet of them. I find that the snag on which the boat struck had been there previous to the spring of 1867. The bow of the "Julia" had already passed one snag which stood about twenty feet below the one that penetrated the vessel. Before the time of this accident many other steamboats had passed the same place or bend in the river, that spring. Boats usually passed on the Nicollet county side, leaving this snag on which the "Julia" struck to the left hand as the boat ascended the stream. The river had that spring washed into the bank on the Blue Earth county side some six or eight feet.

I find that the express messeger on board the "Julia" at the time after being aroused from his sleep by the snagging of the boat, got safely to the shore the contents of his trunk, and some other of the express matter, and that the remainder of the express freight including the plaintiffs' tea, was lost by the sinking of the boat. The defendant's usual charges for carrying such packages as the two chests of tea from New York to Mankato was about ten dollars.

As conclusions of law the referee found among other things "That the American Express Company, the defendant in this case, is a common carrier for hire, and subject to all the duties and obligations of common carriers of goods and merchandise according to the common law;" "That the receipt given by the defendant to Bass & Clark the consignors of the tea in question, whereby the Express Company undertook to limit its liability to that of a mere forwarder of goods, did not in any manner change or vary its responsibility as a common carrier;" "that there was negligence on the part of the officers in not exercising greater vigilance when it was known that the vessel was in the imme-

diate vicinity of these snags, and in a rapid current;" "that there was negligence on the part of the express messenger. He knew or should have known that the boat was passing a dangerous part of the river, and should have been at his post of duty ready for any emergency." He finds that the plaintiffs are entitled to judgment for $150, (that sum only being claimed on the argument,) and costs.

The defendant made a motion to set aside the report of the referee, and for a new trial, which was denied, and judgment entered upon the report. Defendant appeals from the judgment.

W. P. WARNER, for Appellant.

WOOLFOLK & BROWN, for Respondent.

*By the Court.*—BERRY, J.—The defendants are an express company engaged generally, and publicly, in the business of transmitting for hire, goods from place to place, and among others, from New York to Mankato. At different points to which their business extends, they establish local offices, at which an agent is stationed, whose duty it is to receive goods transmitted, and deliver the same to the consignee, as well as to receive goods for transmission. The defendants own no vehicles or other means of transportation, except such as are kept at their local offices, and used solely for the purpose of carrying goods to and from such offices to and from their customers, at the places where the offices are established. The practice of the company is to transmit goods by steamboats, railroads, coaches, &c., owned and controlled by other parties; and it receives to its own use the entire charges for transportation. A messenger in the company's employ accompanies the goods as they are

being transmitted, to take general charge of the same, attend to their transhipment, and to their delivery to the local agent at the point of destination. A common carrier is defined to be "one who undertakes for hire, to transport the goods of such as choose to employ him, from place to place." *Dwight vs. Brewster*, 1 *Pick.*, 50, 53; 2 *Parsons on Contracts*, 163; 1 *Smith L. Cases*, 301.

In *Buckland vs. Adams' Express Co.*, 97 *Mass.*, 124, it is held, that one whose business is for hire to take goods from the custody of their owner, assume entire possession and control of them, transport them from place to place, and deliver them at a point of destination to consignees or agents, there authorized to receive them, is a common carrier, although he styles himself an express forwarder, and although he contracts with others to transport the goods in vehicles of which they are the owners, and the movements of which he himself does not manage or control. These definitions are in our opinion correct, and the defendants, falling within them, must be regarded as common carriers. See also *Sweet vs. Barney*, 23 *N. Y.*, 335; *Russell vs. Livingston*, 19 *Barbour*, 346; 2 *Redfield on Railways*, 19, 30.

This action is brought to recover one hundred and fifty dollars, for two chests of tea belonging to the plaintiffs, the receipt of which by the defendants for transmission from New York to Mankato, and the total loss of which by the sinking of a steamboat, not owned or controlled by the defendants, but upon which the same were being transmitted, are admitted. It is also admitted that the boat sank in consequence of running upon a snag in the Minnesota river, but whether this was, or was not owing to negligence on the part of those managing the boat, is matter of dispute, as to which the testimony is conflicting. Suffice it to say, however, that there is evidence in the case reasonably tend-

ing to sustain the finding of the referee, that the persons operating the boat were guilty of negligence in running upon the snag, so that there is no occasion to disturb the finding, on the ground that it is unsupported by the evidence in this respect. It is found by the referee that Bass & Clark, respondents' consignors, delivered the tea to the defendants at New York, consigned to plaintiffs at Mankato, and at the time of such delivery took from defendants the following receipt:

"American Express Company, express forwarders and foreign and domestic agents. Principal office Nos. 57, 59 and 61 Hudson street. Branch offices, 124 Broadway and 542 Broadway.

NEW YORK, April 29, 1867.

Bass and Clark delivered to us two chests tea marked Christenson & Bro., Mankato, Minn., which we are to forward to our agency nearest or most convenient to destination, only perils of navigation and transportation excepted, and it is hereby expressly agreed, and is part of the consideration of this contract, that the American Express Company are not to be held liable for any loss or damage, except as forwarders only, nor for any loss or damage of any box, package or thing, for over one hundred and fifty dollars, unless the just and true value thereof is herein stated, nor for any loss or damage by fire, the acts of God, or of the enemies of the government, the restraint of government, mobs, riots, insurrections, pirates, or from any of the dangers incident to a time of war, nor upon any property or thing, unless properly packed and secured for transportation, nor upon any fragile article consisting of, or contained in glass.

For the Company,　　　　SPENCE."

At common law, a common carrier is an insurer of the

goods intrusted to him, and he is responsible for all losses of the same, save such as are occasioned by the act of God, or the public enemy. *Angell on Carriers* §§ 67, 148, 153. *New Jersey Steam Nav. Co. vs. Merchants' Bank*, 6 *Howard*, 381.

After much controversy, it may now be taken as settled by the great preponderance of authority, that it is competent for a common carrier to modify, or limit his common law liability by special agreement with the owner of the goods. *York Co. vs. Central R. R.*, 3 *Wallace*, 112. *Judson vs. W. R. R. Co.*, 6 *Allen*, 489. *Dorr vs. N. J. Steam Nav. Co.*, 11 *N. Y.*, 491. 2 *Redfield on Railways*, 93. 2 *Parson's Contracts*, 233–237, *notes and cases cited.*

While there is some conflict of opinion among courts and text writers as to the extent to which the carrier may be permitted to modify or limit his common law liability as an insurer, we think the better and wiser opinion is that he shall not be permitted to exonerate himself from liability for his own negligence, or the negligence of the agents whom he employs to perform the transportation. The undertaking is to carry the goods, and to relieve the carrier from liability for loss or damage arising from negligence in performing his contract, is to ignore the contract itself. It is to say that he shall not be liable for neglecting to do that which he agreed to do, for which alone the goods were delivered to him, and for which alone he has received, or is to receive compensation. This construction would not only be repugnant to the contract, but it would be contrary to the whole spirit and policy of our laws, which make a person who undertakes to do a particular thing, answerable in damages if, through his own fault or negligence, he fails to do it, or does it improperly. *York Co. vs. Central R. R.*, 3 *Wallace*, 112. *Laing vs. Colder*, 8 *Barr*, 479. *New Jersey Steam Nav.*

*Co. vs. Merchants' Bank*, 6 *Howard*, 382. 2 *Redfield on Railways*, 98–108. *Wyld vs. Pickford*, 8 *Meeson & Welsby*, 443. 2 *Parson's Con.*, 247, *note*. *Sayer vs. Portsmouth R. R. Co.*, 31 *Me.*, 228. *Farnham vs. R. R. Co.*, 55 *Penna. St.*, 53. *Angell on Carriers*, §§ 265, 267. And he is responsible, notwithstanding the special agreement, for ordinary neglect; that is to say, for the want of ordinary diligence. *Wyld vs. Pickford, supra.* *Angell on Carriers* §§ 54, 268. 2 *Parson's Contracts, 5th ed.*, 243, *note.* ✦

The special agreement may be in the form of a special acceptance of the goods by the carrier, as by a unilateral bill of lading, or receipt. *Dorr vs. N. J. Steam Nav. Co.* 11 *N. Y.* 491. *Bowman vs. Am. Express Co.* 21, *Wis.* 152. 2 *Redfield on Railways*, 28. *Prentice vs. Decker*, 49 *Barbour*, 30. *Farnham vs. R. R. Co.* 55 *Penn. St.* 53. *Angell on Carriers* §§ 54, 220.

But to bind the shipper by the terms of the special acceptance, he must expressly assent to it, or it must be brought home to him under circumstances from which his assent is to be implied. *Judson vs. W. R. R. Co.* 6 *Allen.* 489. *New Jersey Steam Nav. Co. vs. Merchants' Bk.* 6 *Howard, supra.* 2 *Redfield on Railways*, 22, 93.

In this case it appears that simultaneously with the delivery of the goods to the defendants, the receipt above recited was delivered to the plaintiffs' consignors, and it was produced in evidence by the plaintiffs upon the trial. In the absence of evidence to the contrary, it is to be presumed that the consignors were the plaintiffs' agents to contract for the transportation of the goods; and the delivery of the receipt to the consignors must be held to be equivalent to a delivery to the plaintiffs, to whose possession it appears to have come. And as there is nothing tending to show that any objection was made to the terms of the receipt, or that

they escaped attention, the assent of the consignors—the plaintiffs' agents, and of the plaintiffs through their agents—to such terms, is also to be presumed. *Gould vs. Hill*, 2 *Hill*, 623. 2 *Parson's Contracts*, 234. 2 *Redfield on Railways*, 22, 28. *Bowman vs. Am. Express Co.*, 21 *Wis.*, 158. *King vs. Woodbridge*, 34 *Vt.*, 571. *Shaw vs. Railway Co.*, 13 *Ad., & El., N. S.*, 347. *Palmer vs. Grand Junction R. W. Co.*, 4 *M. & W.*, 749. *Dorr vs. N. J. S.eam Nav. Co.*, 1 *Kernan*, 491. We are not, however, to be understood as determining that the circumstances under which receipts of this character are delivered may not sometimes be such as to repel any presumption of assent to their terms arising from the simple fact of taking such recepts. And this brings us to the most difficult question in the case, viz : what is the fair construction of the receipt ?

The defendants style themselves " express forwarders," and they agree to " forward " the goods. But this language does not necessarily give them the character of simple forwarders, nor prevent them from being treated as common carriers. *Buckland vs. Adams Exp. Co. supra. Read vs. Spaulding*, 5 *Bosworth*, 404.

Then they agree to forward " only perils of navigation and transportation excepted ;" but while this exception embraces more than the " act of God," it goes no farther than to exempt the carrier from liability for such perils as could not be foreseen, or avoided, in the exercise of care and prudence. The exception does not excuse the carrier for negligently running into perils of the kind mentioned. The proper construction is analogous to that which is put upon the words, " perils of the sea," or "dangers of the lake," in bills of lading. *Fairchild vs. Slocum*, 19 *Wend.* 332 ; *S. C.* 7 *Hill*, 292 ; *Whitesides vs. Tharlheld*, 12 *Smedes & Marshall*, 599 ; *Hayes vs. Kennedy*, 41 *Penn. State*, 378 ; *Ed-*

*wards on Bailments*, 492-496, *and cases cited*; *Angell on Carriers*, §§ 166-174. While then it would seem very proper to hold that a snag in one of our western rivers is a peril of navigation, as appears to have been done in Tennessee, (*see cases cited in Edwards' Bailments*, 492,) if a vessel is wrecked upon one through the negligence of the carrier, or of those whom he employs, as the referee finds in the case at bar, the carrier is not absolved. Under such circumstances, the loss is properly attributed to the agency of man, not to the peril of navigation. Having undertaken to carry the goods, the carrier shall not be heard to set up his own negligence to excuse him from responsibility.

The receipt goes on to say, "and it is hereby expressly agreed, and is part of the consideration of this contract, that the American Express Company are not to be held liable for any loss or damage, except as forwarders only." By this clause it is contended that the responsibility of the defendants is limited to that of forwarders pure and simple, that *pro hac vice* they are forwarders to all intents and purposes. Now a mere forwarder is absolved from liability upon showing that he used ordinary diligence in sending on the goods, by careful, suitable and responsible carriers. *Edwards on Bailments*, 293; *Roberts vs. Turner*, 12 *Johns.* 233; *Brown vs. Dennison*, 2 *Wend.* 594; *Johnson vs. N. Y. Central R. R. Co.* 33 *N. Y.* 611. And the defendants insist that the boat, by the sinking of which the loss in this case was occasioned, being staunch and strong, properly manned and equipped, and run by a responsible company, they, the defendants, have done all that was required of them, and are therefore not liable. But looking at the whole scope of the receipt, and at the mode in which the defendants transact their business, we think the construction contended for by the defendants cannot be allowed. The

defendants do not agree to simply forward the goods as mere forwarders do, by delivering them to a carrier. In such cases, if the forwarder has exercised due .diligence in selecting the carrier (when no particular carrier is designated by the owner of the goods) his duty is discharged; his connection with and responsibility for the goods ceases; he has no interest in the freight, nor anything to do with their ultimate delivery to the consignee at the point of destination. But in this case the defendants not only agree to forward the goods, but to forward them to their own agent. As the defendants state in their answer, such agent is, according to their usual course of business, to deliver the goods to the owner personally, and he receives the entire charges.

A messenger in the employ of the defendants accompanies the goods as they are being transported, to take general charge of the same, and attend to their transhipment and delivery to the proper local agent. The defendants are not simply agents for the shipper to contract for the transportation of the goods. There is no contract between the owner of the goods and the owners of the vehicles, or vessels, which the defendants employ, in conducting their business. The goods are delivered in the first instance to the defendants; the defendants through their messenger have charge of them during their transmission; the defendants employ the vehicles and vessels used in transportation for themselves, not for the shipper; the goods when they reach the point of destination are passed over by the messenger to the defendants' local agent, and by him delivered to the consignee. As remarked in a former part of this opinion, the defendants must, under this state of facts, be regarded as common carriers. Their contract is to *carry* the goods, and having entered into this contract, they are not to be permitted to

say that they shall not be responsible for the negligence of themselves, or of the agencies employed by them in its performance, though they may, by special agreement, modify and limit their common law liability as insurers of the goods.

From the very nature of their business, and of the service which they undertake to render to the plaintiffs, the defendants are not forwarders, but carriers, and when they assume to restrict their liability to that of forwarders, it is as much as to say that they will not be responsible to the owners of the goods according to their true character, and to the actual relation which they sustain to them. In our opinion, then, the effect claimed for this clause of the receipt by the defendants is inconsistent with, and repugnant to the scope and intent of the receipt, viewed as a whole, and in connection with the facts showing the defendants' real character and mode of doing business. And although the defendants' liability at common law, as a common carrier and insurer of the goods, is modified by other provisions of the receipt, as well as possibly in some respects by the clause under consideration, it is not so far modified by either as to exempt the defendants from responsibility for their own negligence, or the negligence of the agents employed by them in the transmission of the goods. In fact, so far as the simple duty of carrying is concerned, this clause would seem to have no bearing or application. In *Hooper vs. Wells, Fargo & Co.*, 27 *Cal.*, 11, where an express receipt contained a stipulation that the express company were "not to be responsible except as forwarders," it was held to mean that the "liability" shall be governed by the principles of law applicable to forwarders; that is, that they shall only be liable for losses arising from a want of ordinary care on the part of themselves, and in the agencies made use of by them in the exercise of their ordinary business of car-

Christenson et. al. v. American Express Co.

riers. But though the view thus taken by the supreme court of California would in the case at bar lead to the same conclusion to which we arrive, the construction strikes us to be somewhat forced. We think the view which we take is the more rational, and it is substantially the same suggested by Mr. Redfield in his note to the case cited, 2 *Redfield on Railways*, 4th Ed., 25.

In the case at bar, then, the receipt, and for the purposes of this action, the value of the goods, and the loss by the sinking of the boat being undisputed, and the fact being found by the referee that the loss was occasioned by the negligence of those who were running the boat, judgment was properly rendered against the defendants. We have not adverted to the finding, that the express messenger was also guilty of negligence, because that finding is not necessary to support the judgment, as well as because we have great doubt whether it is supported by the evidence in the case.

Judgment affirmed.