CITIZENS' INS. CO. *v.* KOUNTZ LINE.*

*(District Court E. D. Louisiana.   February 20, 1882.)*

1. COMMON AGENT—JOINT LIABILITY OF CARRIERS.

Where several boats are severally owned by different corporations, and are all run, each for its own account, in one "line," which line is itself another corporation, and all the corporations are represented by the same person as agent, who signs bills of lading for goods shipped upon one of the boats as agent for the "line," *held*, that said agent was a common agent for all, but in his representative capacity acted separately for each, and that hence there was no joint interest and no joint liability, and for goods shipped by one boat the owners of the other boats could not be held liable, as *they* did not undertake the safe carriage thereof.

2. AGENT—POWER TO BIND PRINCIPAL.

An agent, though he have power to transact the joint business of many, cannot therefore bind one of his principals in the separate business of another principal.

*O. B. Sansum* and *John A. Campbell*, for libellants.

*Chas. B. Singleton* and *Richard H. Browne*, and *Geo. H. Shields*, for defendants.

BILLINGS, D. J.   This suit is brought to recover upon bills of lading for goods shipped upon the steamer H. C. Yaeger. The goods were shipped from St. Louis to New Orleans and other points upon the Mississippi river, and were laden upon the Yaeger, which, with her entire cargo, was lost when out from St. Louis about 30 hours. The libellants were insurers of the cargo, have paid the loss, and bring this action as subrogees of the insured, the parties named in the bills of

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

lading. The suit was commenced by attachment, none of the defendants having been found within the district. The bills of lading are for goods shipped by the steamer H. C. Yaeger, and were signed by "J. W. King, agent Kountz line, St. Louis." The defendants, whose property has been attached, are several of five corporations, and the question submitted with reference to this part of the case is, were these five corporations jointly bound by these bills of lading thus issued by King as agent of the Kountz line?

The evidence shows that the Kountz line had been in existence about nine years. It is a corporation established under the laws of Missouri "to receive and forward merchandise and products, and for the purpose of transportation upon the Mississippi river and its tributaries." At the time of its incorporation four boats were corporators or stockholders, but shortly afterwards five separate corporations were formed under the same law of Missouri, also for the purpose of transportation on the Mississippi river and its tributaries. The boats ceased to be stockholders in the Kountz line, the new corporations were called by the name of the several boats, and the title to each boat was transferred to the corporation which bore its name. These five boats constituted a line of steamers running at regular intervals and under one management, and were known as the Kountz line steamers. There was not a complete identity of interest on the part of the Kountz line and the several boat corporations. There were different stockholders, though to a large extent the stock was held by the same persons and in the same proportions. In two of the boat corporations a great majority of the stock was held by the daughters of Com. Kountz. He was the president, and J. W. King was secretary, of the Kountz line, and of all the boat corporations. The corporations were all domiciled at St. Louis, and had the same place of business, which was transacted at the office of the Kountz line under the direction of Com. Kountz, and either by him or King as the agents of the Kountz line.

The Kountz line received all the money earned by each boat at St. Louis, and all that was collected by the agents at New Orleans was forwarded by draft to the Kountz line at St. Louis. The purchases of merchandise for any of the boats, in order to make out a cargo, were made by the Kountz line, were billed to and paid for by it. The Kountz line, by J. W. King, agent, advertised, through circulars and hand-bills widely distributed, that the Kountz line boats were superior to their competitors in their construction, in their prompt

compliance with their bills of lading, and in their rate of charges for freight. One advertisment in an Allegheny newspaper was offered in evidence, in which the Mollie Moore, one of the steamers attached, is announced as forming, with the Yaeger and three other steamers, the Kountz line steamers, running from St. Louis to New Orleans, from the Kountz line wharf-boat, St. Louis, and the public were invited to apply for further information to "John W. King, Kountz line wharf-boat, St. Louis, Mo. ;" "C. L. Brennan, Kountz line office, 106 Gravier street, New Orleans;" "or to W. J. Kountz, Allegheny, Pa."

But the evidence establishes that the accounts of each of these boats were kept upon the books of the Kountz line separately, and that in these accounts each boat was credited with all its own earnings, after deducting $150 as the charge of the Kountz line for each trip; that each boat was charged with the price of goods purchased for and forwarded by it, and was separately credited with the proceeds of all the goods carried by it when sold. The evidence also shows that in two of these boat corporations a dividend had been declared, and that in case of one of these boats the corporation which owned it, out of its earnings, had built a second boat, which it continued to own, and which also ran under the management of the Kountz line.

The question presented is whether the bills of lading issued by King, agent of the Kountz line, for goods shipped by the Yaeger, bound the owners of the Yaeger alone, or whether they bound the owners of all the boats which ran in or constituted the Kountz line steamers.

These bills of lading were issued by the "agent of the Kountz line," i. e., by the Kountz line, and the question is whether the relations of the boats were such, either when viewed as actually existing or when considered as they were held out to the public as existing, as to make the bill of lading issued for one boat the act of the owners of all the boats which were operated by a common agent, and were so connected that they constituted one line.

The questions as to the joint liability of carriers for the acts of a common agent has most frequently arisen with reference to transportation over connected lines, but in principle the question is the same where the owners, having a single agent, represent, not different sections of a continuous route, but different vehicles traversing the same route. The cases with reference to this question divide themselves into three classes:

1. Where there is a sharing of the profits or earnings of each section among the owners of all the sections. Here, upon the same equity which establishes the liability of individuals in partnerships, all the owners are bound by the acts of the agent as to the part of any owner. An illustration of this class is found in the case of *Champion* v. *Bostwick,* where both in the supreme court of New York (11 Wend. 571) and in the court of errors (18 Wend. 175) the liability of the owners of all the parts of a route for a negligence upon one part was maintained, because all shared in the profits of the entire route.

2. Where, without any sharing of earnings, the common agent, having authority to bind the owners of each part to carry over the entire route, exercises that authority, and there is a default upon any part of the route. Here all are bound, because all have agreed to be bound. An example of this class is found in *Fairchild* v. *Slocum,* 19 Wend. 329, afterwards affirmed by the court of errors, 7 Hill, 292.

3. Where, without any sharing of earnings, the owners of the various sections of a route have a common agent, but in his representative capacity he acts separately for each. In this class of cases, since there is no joint interest and no joint agency, there can be no joint liability, and the owner of each section of the route is bound with reference to transportation over his own section only; for an agent, though he have power to transact the separate business of many, cannot, therefore, bind one of his principals in the separate business of another principal. This class of cases is illustrated by *Briggs* v. *Vanderbilt,* 19 Barb. 222, and *Bonsted* v. *Vanderbilt,* 21 Barb. 26. Into this class also falls the case of *St. Louis Ins. Co.* v. *St. Louis, etc., R. Co.* 13 Cent. Law J. 468, where the supreme court holds that connecting lines having a common agent—each bearing its own general expenses and the expenses of every transportation over it, and each being paid according to its comparative length—had no participation in each others' earnings, no relation or association in the nature of a partnership, so that the case did not fall within the first class; and, further, that in such a case there was no holding out of authority to contract for the various constituents of the entire route save from each section for itself.

It must be borne in mind that the case now presented to the court for decision is not a suit in equity in which, by a creditor's bill, it is sought to reach property standing in the name of others, but alleged in equity to be the property of William J. Kountz; but that the allegations of the libel present solely the question: Did these five corpora-

tions-jointly undertake by these bills of lading for the safe carriage of the goods shipped by the H. C. Yaeger?

The evidence of W. J. Kountz, of John W. King, and of Rogers, is to the effect that the accounts of each of the boats running in the Kountz line were kept separate and distinct; that each was charged $150 by the Kountz line for its services for every trip; that after deducting this sum from its own moneys each boat was credited with its earnings and charged with its expenses. There was, therefore, a combining of boats to form a common line, but there was no distribution of earnings—no sharing in any common fund—and there was no connection in the nature of a partnership which would bring the case within the first class. Does it fall within the second class? The material facts are that five corporations, each owning a steam-boat, combine to run under one management—in place of departure and destination, in the intervals at which they run, and in their rates of freight—to form a single line, which they called the Kountz line. They have a common agent—the incorporated Kountz line—but it acts for each boat separately. They do not establish jointly any agency for all, but each adopts the same agent for itself. Here the agent, with reference to each boat, acts for that boat alone, and binds no one else, and falls within the third class, where there is a common agent, but no participation in earnings and no joint agent.

This case is indistinguishable from the cases of *Briggs* v. *Vanderbilt* and *Bonsted* v. *Vanderbilt*, 19 and 21 Barb. These cases were well considered. They spring out of precisely similar facts, and should be read together. The first is a decision of the general term of the supreme court of the Kings county district, and the second a decision of the general term of the supreme court of Albany county. The first was pronounced by Judge Selah B. Strong, for some 16 years judge of the supreme court, afterwards judge of the court of appeals. The second was rendered through Judge Amasa J. Parker. Both these courts were composed of eminent judges. In these cases three companies, one running across the isthmus, one on the Atlantic, and one on the Pacific side, combined and formed what they denominated "Vanderbilt's new line between New York and San Francisco." In their advertisement they announce that the steam-ships running therein were built expressly for that route. They had the same management and places of business both in New York and San Francisco. They advertised to carry passengers through. They advertised and transacted their business through a common agent. The contract was for a through passage, but for each portion of the route separate

CITIZENS' INS. CO. v. KOUNTZ LINE.

tickets were given, all headed "Vanderbilt line," and signed by D. B. Allen, agent, who was the common agent. The proof also showed that there was no joint interest in the passage money, and no agreement for its division. The court held that there was no *joint agency*. Judge Strong says, (19 Barb. 238 :) "They [the defendants, the several lines,] had, it is true, the same agent, but he acted in his vicarious capacity separately for each." Judge Parker (21 Barb. 30,) says: "Allen sold the plaintiff three tickets, and sold each as the agent of the owner of one part of the line."

I confess I have found great difficulty in solving the question so as to make a decision which should be in harmony, on the one hand, with the rule as laid down by Chief Justice Tindal in *Fox* v. *Clifton*, 6 Bing. 240, as to the doctrine of liability springing from holding out one's self as partner, as contradistinguished from the actual relationship of partnership, and the long line of cases in which that rule has been followed; and, on the other hand, with the well-considered cases in which the doctrine of holding out as having the relation of partner is applied to connected lines of carriers. It is clear that the latter cases have modified the general doctrine of implication in its application to connected lines. This is in consequence of the impossibility of conducting the ramified business of transporting our vast commerce over our continent without permitting the announcement of connections in routes which must be understood to be mere conjunctions as to time and place, and not the assumption or distribution of liability. Taking the doctrine of implied liability as it has been announced by the courts whose adjudications should be held the most binding, in its application to carriers who have combined in the formation of continuous routes, I feel sure the bills of lading sued on in this case created an obligation on the part of the owners of the Yeager alone, and that the libellants have failed to establish any joint contract, or any such holding out as would bind the corporations who are the defendants. Without deciding any of the other questions presented in the cause, I am of opinion, therefore, that the libel must be dismissed.